Hillsborough, }
July 1, 1904. }

## BROWN, *Ex'r, v.* FERREN $ *a.*

Where a will directs an executor to pay certain indebtedness of a mortgagor whenever the same shall be reduced "by him" to a specified sum, the legacy is dependent upon a reduction of the debt by the legatee himself, and lapses if the latter dies without having complied with the condition.

If an executor has funds in his hands in excess of the amount necessary to satisfy pecuniary legacies payable at the decease of the testator's widow, a sufficient sum for that purpose should be set apart upon the settlement of his account in the ordinary course, and invested as a trust fund to meet the required payments.

BILL IN EQUITY, by the executor of the will of Ebenezer Ferren, praying for directions as to the execution of the will. Facts agreed, and case transferred from the January term, 1904, of the superior court by *Peaslee,* J.

Ferren died November 15, 1902, leaving a will dated October 24, 1902, by which he gave eleven legacies of $500 each to a nephew, nieces, and benevolent associations, and then, in the eighth item, directed as follows: "I direct my executor, hereinafter named, to pay from my estate the mortgage indebtedness of my half brother, William Ferren, upon his house, whenever that indebtedness shall be reduced by him so that not more than fifteen hundred dollars is due thereon." He gave the rest, residue, and remainder of his property to his wife and her heirs. By a codicil, he directed that the pecuniary legacies should not be paid until the decease of his wife, if she survived him, and gave "the net interest and income of the money necessary to pay said bequests" to her "during her natural life, as a part of the rest, residue, and remainder" of his estate. He further directed as follows: "I direct that the payment of the mortgage indebtedness of my half brother, William Ferren, as provided in item VIII of said will, be made upon the decease of my said wife, and not before, and I give and bequeath the net interest and income of the money necessary to make said payment to my said wife, in case she survives me, during her natural life, as a part of the rest, residue, and remainder of my estate in said will mentioned." The mortgage indebtedness referred to was a note for $1,500, dated May 16, 1899, payable on demand, with interest annually at the rate of five per cent. The interest due May 16, 1902, was paid July 18, 1902; the interest due May 16, 1903, was paid July 11, 1903, by William's heirs, he having died July 7, 1903. The testator's widow is living. There will be in the executor's hands,

upon the settlement of his account, a sum of money exceeding the amount of the legacies payable at the widow's decease.

The bill prays for advice and direction upon the following questions: (1) Has the legacy for William's benefit lapsed? (2) What disposition shall be made of the funds in the executor's hands upon the settlement of his account?

*Burnham, Brown, Jones & Warren,* for the plaintiff.

*Sherman E. Burroughs,* for the Young Men's Christian Association.

*Joseph W. Fellows,* for the Masonic Home.

*John C. Bickford,* administrator of the estate of William Ferren, *pro se.*

All other defendants, *pro se.*

CHASE, J. 1. The provisions of the will and codicil relating to the payment of William's indebtedness, when brought together, as they properly may be (*Hall* v. *Smith,* 61 N. H. 144), read as follows: "I direct my executor . . . to pay from my estate the mortgage indebtedness of my half brother, William Ferren, upon his house, whenever that indebtedness shall be reduced by him so that not more than fifteen hundred dollars is due thereon, [such payment to be made] upon the decease of my . . . wife, and not before," etc. The legacy thus given may be said to consist of an obligation placed by the testator upon his estate in favor of his half brother, to pay the balance of the indebtedness mentioned "upon"—that is, immediately after—the decease of the wife, provided the indebtedness is reduced as set forth in the provision. The obligation became vested in William upon the decease of the testator, but it is conditional, the condition being that the indebtedness shall be reduced as specified before the payment can be made. The condition is precedent and must be performed before the obligation to pay becomes absolute. *Seeley* v. *Hincks,* 65 Conn. 1. The intention expressed by the condition is, therefore, the vital fact needed to correctly interpret the will and determine the first question submitted in the case.

The clause expressing the condition reads: "Whenever that indebtedness shall be reduced by him so that not more than fifteen hundred dollars is due thereon." If the words "by him" were not in the clause, there would be good reason for the position taken by the administrator of William's estate, that the condition

was fulfilled by the reduction of the indebtedness by William's representatives after his decease. But these words are present and they cannot be ignored. If there are facts, aside from the provisions of the will and codicil, which tend to show the significance that the testator attached to these words, and which are competent testimony for consideration upon the question, they are not stated in the case. The court is called upon to interpret the words upon a consideration of the will and codicil solely. These do not contain evidence from which it can be found that the words were used otherwise than in their ordinary sense. They tend to show that, for some reason, the testator attempted to induce William to pay a portion of the debt by holding out to him a provision for the payment of the balance in case he did so; and that the benefit to be derived from the obligation was intended for William personally in his lifetime.

If the condition is not complied with, and nothing becomes payable under the obligation, the money that would otherwise be required for the purpose is disposed of by the residuary clause of the will; so that intestacy as to this part of the estate cannot be urged in behalf of the administrator's position. The provision in the codicil, by which the money necessary to make the payment is to be held during the lifetime of the testator's widow and the net income of it is to be paid to her, is consistent with a purpose that the balance of William's indebtedness should be paid by the estate only in case William himself complied with the condition. A reason for thus holding the money would exist if William reduced the debt to the required limit before the testator's decease, or if, surviving the testator, he had an opportunity to reduce it subsequently.

Giving the words of the will their natural effect, they seem to require that the specified reduction of the indebtedness should be made by William in his lifetime. As this was not done, the obligation has become inoperative because of William's failure to perform the precedent condition upon which it was founded. The answer to the first question, therefore, is that the legacy for William's benefit has lapsed.

2. As the pecuniary legacies do not become payable until the decease of the testator's wife, and in the meantime the net income of the money required to pay them goes to the wife, a sufficient sum for the purpose should be set apart upon the settlement of the executor's account and be invested as a trust fund to meet the required payments. Upon the executor's giving a bond as trustee of the fund, it should be transferred to him in that capacity, whereupon he will be discharged for it in his capacity of executor. The necessity of retaining funds for these purposes furnishes no

occasion or excuse for delaying the settlement of the balance of the estate and the payment of all legacies which are due, there being sufficient funds for the payment of all legacies whether due or not.    *Thyng* v. *Moses*, 65 N. H. 106 ; *Campbell* v. *Clough*, 71 N. H. 181.

*Case discharged.*

All concurred.