## Allgeier, et al. v. Brown, et al.

(Decided June 8, 1923.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Wills—Paper Intended as Codicil is Such.—If instrument signed by testator, and stating that home place was left to A. and his children, was intended as codicil to his will, it was such; his intention being controlling where admittedly he had testamentary capacity.
2. Wills—Instrument Held Mere Memorandum and Not Testamentary.—Instrument signed by testator, who had already made will and codicils, and delivered to A., stating, "This duplicate I leave to Mr. A. that my home place is left to him and his children . . . and my codicil is held by my executor," held mere memorandum indicating at most intention to make codicil and not itself testamentary.
3. Wills—Instrument Referring to Existence and Contents of Codicil Not Provable as Copy of Lost Codicil.—Instrument executed by testator and reading "This duplicate I leave to Mr. A. that my home place is left to him and his children . . . and my codicil is held by my executor," could not be probated as duplicate of lost codicil, as it was not copy thereof.
4. Wills—Instrument Showing Intent to Leave Property to Persons Named Not Testamentary Unless Intended as Medium of Making Such Intention Effective.—Though instrument signed by testator indicated intent to leave home place to A. and his children, it was not testamentory in character unless testator intended it as the vehicle or medium of making such intention effective.

MATT O'DOGHERTY and CHAS. P. TAYLOR for appellants.

JAS P. GREGORY and SHACKELFORD MILLER for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The single question presented by this appeal is whether or not the following paper is of testamentary character:

"July 29, 1918.

"This duplicate I leave to Mr. Algir that my home place is left to him and his children for their pay and kindness to me and my codicil is held by my executor.

"JOHN E. NORRIS."

The relevant facts are: Mr. Norris, apparently in good health, and about 75 years of age, wrote, signed and

presumably delivered this paper to Frank Allgeier, who is the Mr. Algir referred to therein, two days before his death; the home place is a tract of 35 acres, worth about $30,000.00, upon which Norris resided; Allgeier, who was his neighbor, cultivated part of this land for him, and performed chores about the place; previous to the delivery of this paper, Norris had executed and deposited with a named executor an elaborate and carefully prepared will, by which, with two codicils attached thereto, he devised all of his property to named trustees for the use of his invalid daughter, an infant granddaughter, and a niece and nephew.

It is not claimed that this paper invalidates the will, except as to the home place, but that it was intended as and is a codicil thereto. If it was so intended, then such it is; the intention of the testator, who admittedly possessed testamentary capacity, being the crux of the whole matter.

The question for decision therefore is: Did Norris intend by this paper to devise his home place to Allgeier and his children, or did he intend thereby simply to assure Allgeier that he had executed or would execute a codicil to his will so providing? In other words, was the paper written *animo testandi?*

That it was not so written seems to us quite clear. Norris called it a duplicate, and refers therein to a codicil held by his executor. If his use of the words "duplicate" and "codicil" were accurate, then clearly this paper was not intended to be operative as a codicil to his will, which was held by his executor, and which admittedly he did not intend to revoke in its entirety, but was merely a copy of a codicil held by his executor.

But it is even more evident that this paper, although styled a duplicate, is not a duplicate or copy of a codicil to his will, since plainly its three recitals, "This duplicate I leave to Mr. Algir," "that my home place is left to him," etc., and "my codicil is held by my executor," are informative merely of the existence of a codicil, its contents, and where it would be found, rather than a copy of such a paper.

We therefore regard the contention that the paper should be treated and probated as the duplicate of a lost codicil so clearly without merit as not to call for further discussion or a reference to the authorities on that subject.

It also results from this conclusion, and we think it is apparent from the paper itself, that the word "duplicate" was used in the sense of memorandum. This much is conceded by appellants on their main contention, which is that the paper is testamentary, not as a copy but of and by itself. They further insist that by the word "codicil" decedent referred to his will, which was at the time in the hands of his executor.

Thus construed, the paper would read: "This *memorandum* I leave to Mr. Algir, that my home place is left to him and his children for their pay and kindness to me, and my *will* is held by my executor." These substitutions would make the paper conform to the fact that his executor held his will, and not a codicil giving Allgeier his home place, and would possibly so alter its tenor as to indicate that it was intended to be a codicil to the will.

But there is, in our judgment, no basis for the assumption that decedent did not know the difference between a codicil and a will and purposely used the former rather than the latter word, other than the further assumption that he meant by the paper something more than is indicated by the terms he employed, and by its delivery to Allgeier instead of attaching it to his will as he had two codicils previously executed.

We do not mean, of course, that the delivery of the paper to Allgeier or to another than his executor is determinative of its character. But we do consider it a circumstance slightly confirmatory of our view of the paper itself, since it is a variance from the writer's custom if the paper was written *animo testandi;* and under all of the circumstances, we do not feel justified in changing the words he employed, or departing from their usual and accepted meaning, except as is apparent from the paper itself, that duplicate was used in the sense of memorandum.

We may concede that, with this single alteration of its terms, the paper sufficiently indicates that at the time Norris really intended to leave his home place to Allgeier and his children rather than to his own dependents, although we seriously doubt if this is true, and still the paper is not testamentary in character unless Norris also intended that it should be the vehicle or medium of making that intention effective. As already indicated, we do not think it is reasonably susceptible of being so construed.

If, as we have no reason to doubt, Norris meant codicil and not will, when he said "and my codicil is held by my executor," what else could he have meant but "that my home place is left to him and his children, etc.," by such codicil, and this paper "I leave to Mr. Algir" not as the codicil, but as evidence that such a codicil "is held by my executor"?

Being convinced that such is the true import of the paper, and that there is no apparent reason for believing that Norris did not understand the difference between a will and a codicil, or that he purposely did not use the latter term, it results that the paper is not of testamentary character.

This conclusion on the facts clearly differentiates this case from all of those relied upon by appellants, in which letters or other informal papers were held to be testamentary. Of these cases, the only one at all like this one on its facts is Webster v. Lowe, 107 Ky. 293, 53 S. W. 1030, 21 K. L. R. 998, where a paper was held to be testamentary which, after giving a historical sketch of the writer's life and referring to a certain house and lot, recites, "I have requested my executors to give a clear deed to the property after my death to" Charley Webster and wife.

The only reason given for so holding is: "The fact that the testator may have labored under the impression that it was necessary for his executors to convey the property to Webster and wife after his death does not indicate that he did not intend *the paper in question* to be a disposition of the property."

This is a clear recognition of the principle of law that the paper to be testamentary must have been written *animo testandi,* and a finding of fact that its recitals did not indicate the contrary. So even that case supports our position on the question of law involved, as do all other cases and text-books we have examined, and we are thoroughly convinced that the paper here involved shows unmistakably on its face that it was not intended as a codicil to decedent's will.

The material difference in the facts in the two cases is, that there the writer mistakenly believed a deed by his executors, *in addition* to his written instrument, was necessary to pass his title to those he desired to have it, which belief was held not inconsistent, as clearly it was

not, with his intention, found to exist from a consideration of the whole paper, that it should pass thereby.

Here Norris indicated *his intention* of employing a different instrument to pass the title rather than the one here involved, and he was not mistaken in his right so to do.

Judgment affirmed.