### Hurley et al. v. Blankinship et al.

April 25, 1950.

Rehearing denied June 6, 1950.

James W. Turner, Judge.

C. F. See, Jr. and M. J. See for appellants.

Eldred E. Adams and Chesley A. Lycan for appellees.

JUDGE KNIGHT—Affirming.

This appeal is from a judgment of the Lawrence Circuit Court, adjudging that a will dated April 6, 1944, and four codicils, one undated and three others subsequently dated, was the last will and testament of R. F. Blankinship which judgment sustained the order of the Lawrence County Court probating said will. Reversal is sought on three grounds: (1) that the will was not properly executed; (2) that the testator did not have sufficient mental capacity to make a will; (3) that the will was the result of undue influence exerted on testator. These will be considered in the above order.

### Was Will Properly Executed?

At the time the original will was written, on April 6, 1944, testator was ninety-five years old and he died three years later at the age of ninety-eight. In his younger days he had been a lawyer and later a merchant in Pike County, but the last fourteen years of his life were spent in farming in Lawrence County. The will, a holographic one, was written on one side only of five separate sheets of paper. On the first page the will begins as follows: "The last will and testament of R. F. Blankinship, widower." Near the bottom of the fifth page in closing, the will says: "Written by the hand of R. F. Blankinship," after which sentence he names his executors. There was no separate signature at the end of the will, although it could be argued with reason that his signature in the last sentence above quoted, "Written by the hand of R.

F. Blankinship," so near the end of the will, was effective as his signature at the end of the will, a question we will not here decide. On the back of the last page, in the same handwriting as the will, is this endorsement: "The last will and testament of R. F. Blankinship. Date April 6th day 1944 and no other will to be considered as valid." What appears to be the first codicil was not dated but it was wholly written by testator and signed by him at the end. It begins by saying: "This is a codicil to my last will as it seems that something is omitted towit." On the back of this codicil in testator's handwriting it says: "This is a codicil to my last will and is made a part thereof. R. F. B.——p."

The next codicil is dated May 10, 1944, and in it he says: "This is the second codicil to my will towit." On the same date on a separate sheet he wrote a suggestion to his heirs to be careful with the timber and not waste it. In this he said: "This is not any part of my will but only a suggestion." Both this suggestion and codicil of May 10, 1944, were signed by the testator and, on the back of the codicil was written: "A codicil as part of my will and suggestions for disposition." The third codicil was dated August 18, 1945, and is signed by the testator and, after his signature, he added: "Put this with the will as a part of it," and on the back: "Put and use with my last will." The last codicil was dated February 28, 1946, and was signed by testator. In it he says: "This is a codicil to my will and is to be a part of it."

By this will and codicils testator gave most of his real estate to his three sons and a daughter with minor bequests to his grandchildren, who were children of his deceased children, and it is principally these grandchildren who are contesting the will. After the will, some of the property was deeded by him to those to whom it had been given by the will, including some of the contestants.

The will and all codicils were placed together in an envelope and found together in his trunk upon his death. There is no dispute that the will and all codicils are in the handwriting of the testator and that all were signed by him except the original five page will. The question for decision then is this: Is the will void because it is not subscribed by the testator, as required

by KRS 394,040, as appellants contend, or is the will revived, republished and validated by the subsequent codicils which specifically refer to the will and which codicils are duly signed?

If there were nothing but the will, which we will here treat as though it is not signed by the testator, it would have to be declared invalid under KRS 394.040. However, these codicils, all in the same handwriting as the will and so definitely referring to the will which had been written by him only a short time before, appear to us to have revived and republished his will and as clearly identified it as his will as if he had signed it. The general rule is stated in 68 C. J., page 861, sec. 567 and 577 as follows:

"(576) C. The general doctrine is well settled that a codicil executed with the formalities required by statute for the execution of wills operates as a republication of the will, so far as it is not altered or revoked by the codicil, if the codicil is valid and if the intention of the testator is not thereby defeated; and the will and codicil are to be regarded as but one instrument, speaking from the date of the codicil, and this rule has been codified in some jurisdictions."

"(577) b. The general rule is that a codicil duly executed will operate as a republication of an earlier will or codicil, although the latter is inoperative or imperfectly executed or attested, as where a codicil duly executed by a testator of sufficient capacity has been held to republish and validate a prior will or codicil which was invalid because of alterations after execution, absence of testamentary capacity, presence of undue influence, violation of the then existing statute against perpetuities, or failure to comply with statutory formalities relative to execution.

An early Kentucky case recognizing this principle is Beall v. Cunningham, 3 B. Mon. 390, 42 Ky. 390, 39 Am. Dec. 469. In that case it was contended that though a codicil duly executed may operate as a republication of a revoked will which has been duly executed as such, yet it cannot have the effect to bring into operation as a will a paper which has never been signed or executed as a will. Answering that, this Court said: "We can see no difference in principle in the cases. If a codicil so attaches itself to and forms a part of a revoked will as

to revive and give force and effect to it as such, we cannot perceive why it may not be so attached to and engraft upon any other paper which the testator may choose to treat as his will as to give force and operation to it as his will. In either case it is a question of intention. * * * The reason that would sustain the republication in the one case would equally sustain the publication in the other and each rests upon the recognized intention of the testator plainly implied from the execution of the codicil referring to the paper as his will.''

As was said in the more recent case of Farmers' Bank & Trust Co. v. Harding, 209 Ky. 3, 272 S. W. 3, 5: ''It is well established that an instrument invalid as a will may be given life or republished and validated by the execution of a valid codicil.'' (Citing cases.)

On principle and on the above authority and under the facts in this case in which the codicils so clearly point to and are interlocked with the unsigned will as to manifest the intention of the testator that he intended it to be such, we are constrained to the opinion that the lower court did not err in refusing to peremptorily instruct the jury to find for appellants because the will in question was not signed. Instead the court properly instructed them to find the instrument valid as decedent's will unless they believed from the evidence that at the time he wrote the will and codicils he was of unsound mind or that he wrote them under undue influence, which questions were submitted to the jury under proper instructions. Under these instructions the jury found the instrument to be the last will and testament of R. A. Blankinship.

### Mental Incapacity.

On the question of whether the deceased was mentally competent to make a will, there is, of course, some conflict in the evidence. However, the decided preponderance of evidence is that, although he was old, he was a man of strong mentality and was fully capable of making a will. There was no medical testimony on either side, but eighteen lay witnesses who frequently came in contact with him, such as neighboring farmers and stockmen with whom he did business, employees and tenants on the farm who saw him daily in connection with their work, the county judge of his county, a restaurant operator in Louisa where he often ate, a man who had bor-

rowed money from him on a mortgage, sons, a stepson, granddaughters, a daughter-in-law, some of them contestees herein, and others who came in frequent contact with him, testified that he was sound of mind and strong of will, knew his property and what he wanted to do with it.

On the contrary, appellants introduced ten witnesses, some of them contestants herein. Some of these witnesses had not seen deceased for a long time. Some testified that deceased did not know them when they visited him. Some testified that he was feeble during the last few years of his life and that his hearing and sight were bad. Only a few of these witnesses testified positively that they thought he was of unsound mind or, as one of them expressed it, "in my opinion he didn't have mind enough to do his business up like he wanted to at his age." Some of them admitted on cross examination that they didn't know his real mental condition and couldn't say whether he was of sound mind at the time the will was written.

Without detailing the testimony as to the mental capacity of the deceased at the time he made his will, all of which testimony we have carefully read and considered, we are of the opinion that it was amply sufficient to sustain the verdict of the jury that deceased was of sound mind when he wrote his will and codicils and that appellants did not sustain the burden of proof, which they had, that he was at that time of unsound mind.

### Undue Influence.

There was no evidence that any undue influence was exercised by anyone on deceased. At most there is only suspicion that such influence might have been exercised on him by one of his sons, Perry C. Blankinship, and the latter's wife, with whom deceased lived during the last three years of his life. It is not enough that there was an opportunity to exercise undue influence or a possibility that it might be exercised. There must be substantial evidence that it actually was exercised. Jones v. Beckley, 173 Ky. 831, 191 S. W. 627; Clark v. Johnson, 268 Ky. 591, 105 S. W. 2d 576. There was no such evidence here.

Wherefore the judgment of the lower court is affirmed.