Victor C. JOHNSON and Beulah J. Johnson,
Plaintiffs in Error,

v.

Joseph E. JOHNSON, Defendant in Error.

No. 35937.

Supreme Court of Oklahoma.

Oct. 19, 1954.

Rehearing Denied Jan. 25, 1955.

Application for Leave to File Second Petition for Rehearing Denied Feb. 8, 1955.

Ames, Daugherty, Bynum & Black, Oklahoma City, for plaintiffs in error.

Suits & Weiss, Fred E. Suits, Oklahoma City, for defendant in error.

PER CURIAM.

This is an appeal from a judgment of the District Court of Oklahoma County affirming the County Court of Oklahoma in denying probate to an instrument purporting to be the last will and testament of Dexter G. Johnson, who was sometimes known as D. G. Johnson.

The instrument in question was on a single sheet of paper and contained three typewritten paragraphs,. started out with the words, "I, D. G. Johnson also known as Dexter G. Johnson, of Oklahoma City, Oklahoma County, State of Oklahoma do hereby make, publish and declare this to be my last .Will and Testament * * *" and made numerous bequests and devises and concluded with recommending the employment of a certain attorney to probate the will. This typewritten portion was not dated nor did the testator sign his name at the conclusion thereof nor was it attested by two witnesses. At the end of the typewritten portion, at the bottom of the sheet of paper, appears the following, admitted to be in the handwriting of the deceased:

"To my brother James I give ten dollars only. This will shall be complete unless hereafter altered, changed or rewritten.

"Witness my hand this April 6, 1947. Easter Sunday, 2:30 P.M.

"D. G. Johnson

"Dexter G. Johnson."

On trial de novo in the District Court the proponents of this purported will, plaintiffs in error here, introduced evidence over objections (which objections were never ruled on by the court) showing that Dexter G., or D. G. Johnson for many years was a practicing attorney in Oklahoma City; that during his practice he prepared many wills, all in proper form, for various clients; that in October, 1946, deceased told Jack G. Wiggins, his insurance counselor, that he had a will but it was out of date and needed changing; that in March, 1947, deceased told this insurance counselor that he was working on his will, making changes, and expected to complete it right away and told Mr. Wiggins in general the disposition he intended to make of his property; that in the latter part of 1946 Lowell M. Wickham, deceased's rental agent, was shown the instrument here in question at which time it had only the typewritten portions on it; that at that time deceased told him that was his will and he wanted Wickham to witness it, but he and deceased started discussing other business and neglected to do it at that time; that when Wickham left the paper was lying on deceased's desk; that some months later Wickham asked deceased about witnessing the will and deceased replied he had changed his will by codicil and did not need Wickham to sign it as witness; an offer by statement of counsel was made to show the intention of the testator in leaving his property to the persons he named as beneficiaries which was rejected by the court and is not helpful in deciding the questions raised here.

The above is a summary of all the testimony that appears in the record. None of the testimony presented to the County Court appears in the record; defendant below, contestant of the will and defendant in error here, offered no testimony.

Is this instrument one complete, integrated writing, partly typed and partly handwritten; or is it an unexecuted non-holographic will to which is appended a valid holographic codicil? If it be the former it cannot be admitted to probate because it was not signed in the presence of two subscribing witnesses as required by law.

Defendant in error urges that the instrument shows on its face that it is but one instrument and that it cannot be divided into two parts, one, the typewritten part to be called a will and the other, the handwritten part, to be called a codicil. In support of his contention he says that the typewritten portion standing alone is not a will because, though admittedly testamentary in character, it is not dated, signed, nor witnessed; that it takes the handwritten portion to complete the instrument; that by definition to have a codicil there must first be a will.

There is no question in this case that the typewritten instrument which was not signed, dated, nor attested was prepared by D. G. Johnson and that it is testamentary in character, or that he intended same as his will or that it effectively makes complete disposition of his estate. A will may be so defective, as here, that it is not entitled to probate but if testamentary in character it is a will, nonetheless.

"A man's will is the instrument by which he expresses his intention as to the disposition of his property at his death."—Loveren v. Eaton, 80 N.H. 62, 113 A. 206.

"If maker intended document to be effective at death, it is a 'will.'"—Knoll v. Hart, 308 Pa. 223, 162 A. 228.

Nor is there any question that the handwritten words were wholly in the handwriting of the testator.

The question next arises, do these words meet the requirements of a codicil? By definition a codicil is a supplement to, an addition to or qualification of, an existing will, made by the testator to alter, enlarge, or restrict the provisions of the will, to explain or republish it, or to revoke it, and it must be testamentary in character. In re Whittier's Estate, 26 Wash.2d 833, 176 P.2d 281. A codicil need not be called a codicil, In re Carr's Estate, 93 Cal.App.2d 750, 209 P.2d 956; In re Atkinson's Estate,

110 Cal.App. 499, 294 P. 425. The intention to add a codicil is controlling. Allgeier v. Brown, 199 Ky. 672, 251 S.W. 851; Stewart v. Stewart, 177 Mass. 493, 59 N.E. 116; In re Whittier's Estate, supra. The handwritten words are admittedly testamentary in character. It is clear that they make an addition to the provisions of the will theretofore existing. This codicil is on the same sheet of paper and the terms thereof, the circumstances surrounding it, as shown by the evidence indicate that the testator intended it as an addition to and republication of his will.

██ ██ If it be a codicil, then, is it a valid one? It is written, dated, and signed by the testator. It meets all the requirements of a valid holographic codicil. The fact that the codicil was written on the same piece of paper as the typewritten will will not invalidate the codicil. In re Atkinson's Estate, supra.

It is admitted that a codicil republishes a previous will as modified by the codicil as of the date of the codicil. Can a valid, holographic codicil republish and validate a will which was theretofore inoperative because not dated, signed, or attested according to law?

██ The general principle of law is that a codicil validly executed operates as a republication of the will no matter what defects may have existed in the execution of the earlier document, that the instruments are incorporated as one, and that a proper execution of the codicil extends also to the will. Twenty-two states and England so hold. For citation of cases see Annotations 21 A.L.R.2d 823. That a properly executed codicil will give effect to a will which has never been signed has been specifically held in Kentucky, New Jersey, and England. See Beall v. Cunningham, 1843, 3 B.Mon. 390, 42 Ky. 390, in which it appeared that a paper wholly written by testator dated 1925 was denied probate, and thereafter there was offered for probate a typewritten will dated in 1827, which was unsigned and unattested, together with a codicil dated 1832 on the same sheet of paper which was signed and attested; the opinion holds that the properly executed codicil had the effect of giving operation to the whole as one will. See also Hurley v. Blankinship, 1950, 313 Ky. 49, 229 S.W.2d 963, 21 A.L.R.2d 817 in which a holographic will which was not signed was held validated by properly executed holographic codicils; Doe v. Evans, 1832, 1 Cromp. & M. 42, 129 Eng.Reprint 307, in which an unsigned typewritten will was held validated by a properly executed codicil on the same sheet of paper; see also McCurdy v. Neall, 1886, 42 N.J.Eq. 333, 7 A. 466 and Smith v. Runkle, 1916, 86 N.J.Eq. 257, 98 A. 1086, in both of which the signatures to the wills were defective because not placed on the will in the presence of witnesses but it was held that valid codicils thereafter executed gave operation to the entire will and codicils; Rogers v. Agricola, 176 Ark. 287, 3 S.W.2d 26, in which an invalid typewritten will (due to only one witness) was held validated by a subsequent holographic codicil; In re Plumel's Estate, 151 Cal. 77, 90 P. 192, an invalid holographic will because of printing thereon was held validated by a subsequent holographic codicil written on the back of the will.

The states of Arkansas, California, Illinois, Iowa, Louisiana, Missouri, Nebraska, New Hampshire, Ohio, Pennsylvania, Tennessee, Virginia and Wisconsin have each held that a will which was inoperative and not subject to probate because of imperfect attestation was republished and validated by the execution of a valid codicil thereto by the testator and each has announced the rule outlined above that codicil operates as the republication of the will no matter what defects may have existed in the execution of the original instrument.

The only exception is New York which modifies the general rule by holding that a properly executed codicil validates a will originally invalid for want of testamentary capacity, undue influence, or revocation but does not validate a will defectively executed because of improper attestation. It will be noted, however, that Justice Cardozo in Re Fowles, 1918, 222 N.Y. 222, 118 N.E. 611, Ann.Cas. 1918D, 834, stated that the rule was malleable and uncertain and he anticipated that New York would abandon its limitations on the rule.

In the case of Beall v. Cunningham, supra, the Kentucky court in discussing the New York rule that a revoked will could be validated by a codicil but an improperly executed one could not said:

"We can see no difference in principle in the cases. If a codicil so attaches itself to, and forms a part of a revoked will, as to revive and give force and effect to it as such, we cannot perceive why it may not be so attached to and ingrafted upon any other paper which the testator may choose to treat as his will, as to give force and operation to it as his will * * * the reason that would sustain the republication in the one case would equally sustain the publication of the testator, plainly implied from the execution of the codicil, referring to the paper as his will."

We therefore hold that the valid holographic codicil incorporated the prior will by reference and republished and validated the prior will as of the date of the codicil, thus giving effect to the intention of the testator.

Reversed with directions to enter the will for probate.

JOHNSON, V. C. J., and WELCH, CORN, ARNOLD and BLACKBIRD, JJ., concur.

HALLEY, C. J., and WILLIAMS and DAVISON, JJ., dissent.

CORN, Justice (concurring specially).

I concur in the per curiam opinion. In so doing I have in mind the purpose of our law-makers in enacting statutes regulating the making of a Will. They require certain steps to be taken in the execution of a Will solely for the purpose of permitting a person to dispose of his property by Will, to take effect after his death the way he desired, and to prevent someone, through fraud or by other means, from permitting this to be done. It was the purpose of our lawmakers, in passing the Act, to make it impossible for fraud or undue influence to be practiced in the execution of the Will, and in the disposition of the property disposed of by the Will.

It was not the intent of our law-makers, in enacting these statutes, if substantially complied with, to ever allow a miscarriage of justice by a wrongful disposition of the testator's property contrary to his intent. 84 O.S. 1951 § 151 provides:

"Intention of testator governs.—A will is to be construed according to the intention of the testator. * * *"

In Munger v. Elliott, 187 Okl. 19, 100 P.2d 876, 877, in syllabus 1, we held:

"The cardinal rule for the construction of Wills is to ascertain the intent of the testator, and give effect thereto, if such intent does not attempt to effect that which the law forbids. All rules of construction are designed for this purpose, and all rules and presumptions are subordinate to the intent of the testator where that has been ascertained."

In the instant case, the intent expressed by the testator in the written instrument which he prepared, while of sound mind and disposing memory, is clear and beyond any question of doubt, free from fraud or undue influence of any kind. The only objection raised is that the statutes were not strictly complied with in the execution of the Will. I am of the opinion, when a person dies leaving a written instrument which he intended to be his last Will, and it is free from fraud or undue influence and in harmony with the purpose of our law-makers for enacting statutes regulating the execution of Wills, and also in accord with the laws of England and twenty-two of our states, it would be a miscarriage of justice to not admit the Will to probate, and thereby allow the property to be disposed of contrary to the testator's intent.

To hold otherwise would, in effect, permit a contrary disposition of testator's property against the purpose for which the statutory provisions were aimed.

HALLEY, Chief Justice, (dissenting).

I am compelled to dissent in this case and in order that there be no misunderstanding about this instrument which the majority opinion says should be admitted to probate, I am setting out a photostatic copy of the front and back thereof:

*3/691*

129067

BOOK 564 PAGE ...
FILED IN COUNTY COURT
OKLAHOMA COUNTY, OKLA.
JUL 2 1952
CLIFF MYERS, COURT CLERK
By ...... DEPUTY

I, D. G. Johnson also known as Dexter G. Johnson, of Oklahoma City, Oklahoma County, State of Oklahoma do hereby make,. publish and declare this to be my last Will and Testamnt and revoke all former wills and codocils by me made.

FIRST: I direct my Executor to pay my just debts,last illness and burial expense.

SECOND: I give, devise and bequeath to my sister Beulah Johnson also known as Beulah J. Johnson and my brother V. C. Johnson also known as Victor C. Johnson all of the rest, residue and rrmainder of my estate, real, personal and mixed propertt; wherever situated and whatsoever kind and/or character, subject only to the following requests of my said brother and sister,namely .and specifically that at a time when in the jydgment of my said sister and brother they shall deem the cpndition of the estate in a proper and suitable condition so to' do without material injuryxxxx damage to or otherwise detremental to said estate and the properties reasonably disposed of to pay into a trust fund to be governed by my said sister and brother the sum of Fifty thousand dollars to be used for the erection of a new church in Montrose,Effingham County, State of Illinois on the site where the present church now stands being·the church formerly attended by our family regularily and to build a parsonage of not less than six rooms,nor more than eight rooms on the lots owned by me across the street from said church site and said lots .to be deeded to said church organization for the use of the minister to preside over the church aforesaid; also to use any sum remaining for a mauseloeum or suitable arrangement. as my said sister and brother may determine proper and fitting for the graves of our family now buried there and any sum then remaining to generally improve said cemetery a ll as my said sister and brother may determine; if there be difference of opinions or desires in any matter, then the will and desire of my sister shall prevail. and further that a fund of Ten thousand dollars to be set up and invested in SAFE SECURITIES with reasonable rate of interest for the·use and benefit of my great neice Joanna Johnson and a similiar sum for Joanna's sister with same conditions and to be paid to each of them in monthly payments of Seventy-five dollars each month beginning on their seventeenth birthday and thereafter until exhausted ans each shall have received the full sum together with it's accruals of ten thousand dollars or a total of twenty thousand dollars; I also request that a fund of ten thousand dollars be set up for the purpose of paying to my brother Joseph Evera d Johnson a monthoy stipend of fifty dollars each and every month during his life to begin ninety days after my death and to end with the death of my said brother or the exhaustinn of the funds if they shall, exhaust prior to his death with any sum remaining to remune to the use and benefit of my brother Victor C. Johnson and sister Beulah J. Johnson, and yhe further sum of Five yhousand dollars to be paid within reasonable time to Alma L. Kloss friend of my sister Beulah J.Johnson in appreciation for her kindness and sincere friendship to and for my sister Beulah J. Johnson with the request that said Alma L. Kloss invest same in some good securities, government bonds or annuity, upixmxxt. I further suggest that my said sister and brother employ Claude Monnett, attorney and friend of mine be employed for a reasonable fee, to be agreed upon by thexpxxkinxx my sister, brother and Mr. Monnett for complete service but should they not agree then my said brother and sister shall employ whomsoever they may desire, being contious that nothing to be done without their consent and knowledge

To my brother James I give ten Dollars and

This will shall be Complete unless forgtten Altered Changed or rewritten Witness My hand this April 6, 1947

Easter Sunday 2:30 P.m.

Dexter G. Johnson

TABLE NO. 2  EXHIBIT A
DISTRIBUTION TO FUNDS BY CLASSIFICATION AND COLLECTING AGENCIES, FISCAL YEAR 1943-44

| NAME OF FUND BY CLASSIFICATION | OKLAHOMA TAX COMMISSION | STATE OFFICES ETC. | STATE SCHOOLS/INSTITUTIONS | U.S. TREASURY | 1932 AND BACK TAX | EARNINGS ON INVESTMENTS | REFUNDS & MISC. | ESCHEATS | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **Appropriated Funds:** | | | | | | | | | |
| General Revenue | 28,851,926.15 | 2,312,392.16 | | | | | 14,97.78 | | 31,210,608.04 |
| Oklahoma Tax Commission | 1,884,153.23 | | | | | | | | 1,884,153.23 |
| State Highway Commission | 7,417,961.74 | 275,107.71 | | | | | 6,.61 | | 7,938,776.20 |
| **Section Thirteen:** | | | | | | | | | |
| Oklahoma University | | 80,799.63 | | | | | | | 80,799.63 |
| Northern Oklahoma Junior College | | 8,977.70 | | | | | | | 8,977.70 |
| East Central State College | | 14,962.89 | | | | | | | 14,962.89 |
| Central State College | | 14,962.90 | | | | | | | 14,962.90 |
| Northeastern State College | | 14,962.89 | | | | | | | 14,962.99 |
| Northwestern State College | | 14,962.90 | | | | | | | 14,962.90 |
| Southeast State College | | 14,962.90 | | | | | | | 14,962.90 |
| Southwestern Institute of Technology | | 14,962.90 | | | | | | | 14,962.90 |
| Langston University | | 8,977.70 | | | | | | | 8,977.70 |
| Oklahoma A. & M. College | | 80,799.63 | | | | | | | 80,799.63 |
| **New College:** | | | | | | | | | |
| Oklahoma University | | 30,166.03 | | | | | | | 30,166.03 |
| Northern Oklahoma Junior College | | 15,908.69 | | | | | | | 15,908.69 |
| Central State College | | 6,213.20 | | | | | | | 6,213.20 |
| East Central State College | | 6,213.18 | | | | | | | 6,213.18 |
| Northeastern State College | | 6,213.19 | | | | | | | 6,213.19 |
| Southeast State College | | 6,213.20 | | | | | | | 6,213.20 |
| Northwestern State College | | 6,213.20 | | | | | | | 6,213.20 |
| Southwestern Institute of Technology | | 6,213.20 | | | | | | | 6,213.20 |
| Langston University | | 16,236.53 | | | | | | | 16,236.53 |
| Oklahoma A. & M. College | | 32,025.52 | | | | | | | 32,025.52 |
| Public Building | | 248,197.26 | | | | | | | 248,197.26 |
| Public Safety | 629,388.85 | 627.51 | | | | | | | 630,016.36 |
| Board of Cosmetology | | 31,641.06 | | | | | | | 31,641.06 |
| Board of Optometry | | 1,030.50 | | | | | | | 1,030.50 |
| **TOTAL** | 38,763,429.97 | 3,269,944.18 | | 245,641.14 | | | 15,040.39 | | 42,345,370.63 |
| | | | | | | | | | |
| **Special Cash Funds:** | | | | | | | | | |
| Income Tax Adjustment | 218,420.12 | | | | | | | | 218,420.12 |
| Special Cotton School | 218,903.50 | | | | | | | | 218,... |
| Beverage Cash Fund | 1,237,983.65 | | | | | | | | 1,237,... |
| Oil Compact | 18,448.25 | 8,728.88 | | | | | | | 18,418.... |
| Oil Conservation | 98,127.82 | | | | | | | | 104,556.76 |
| Used Equipment | 10,990.00 | | | | | | | | 10,990.00 |

FILED IN COUNTY COURT
OKLAHOMA COUNTY, OKLA.
JUL 21 1952
CLIFF MYERS, COURT CLERK
By _____ DEPUTY

OCT 2 1952

Both the County Judge and the District Judge denied this writing probate.

Under my conception of the law of wills, I would never agree that the foregoing instrument should be admitted to probate.

In the first place it was not executed according to Section 55, 84 O.S. 1951, which is as follows:

"Every will, other than a nuncupative will, must be in writing; and every will, other than a holographic will and a nuncupative will, must be executed and attested as follows:

"1. It must be subscribed at the end thereof by the testator himself, or some person, in his presence and by his direction, must subscribe his name thereto.

"2. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them, to have been made by him or by his authority.

"3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and,

"4. There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will at the testator's request and in his presence. R.L. 1910, § 8348."

It is well known that many instruments offered for probate have been denied admission to probate because not properly executed in accordance with statutory requirements. In the case of In re Abrams' Will, 182 Okl. 215, 77 P.2d 101, 103, this Court said:

"It is to be regretted that the intention of the testatrix is defeated by her failure to observe the statutory requirements, but to hold otherwise would in effect be to let down the bars to evils against which the statutory provisions are aimed. * * * "

In In re Stover's Will, 104 Okl. 251, 231 P. 212, 213, the Court quoted the following from 28 Ruling Case Law, page 108, paragraph 60:

" 'The formalities to be observed in the execution of wills are simple and calculated to prevent frauds and uncertainty in the testamentary dispositions of property, and where a Legislature has seen fit to impose certain requirements looking to the execution of a will, compliance with such requirements is necessary to the validity of any instrument offered as a testament. No essential formality may be dispensed with, and a failure to comply with formalities prescribed for the prevention of fraud is not excused by showing that in the particular case under consideration there was no fraud. * * * ' "

In Hill v. Davis, 64 Okl. 253, 167 P. 465, 468, L.R.A. 1918B, 687, it is said:

"The right to dispose of property by will is a creature of the statute. The Legislature has the power, in granting the right, to determine and prescribe the form and manner in which it shall be exercised. * * * The provisions of the statute quoted are mandatory, * * * ."

In In re Stover's Will, supra, this Court held:

"Where a nonholographic will is offered for probate, and the evidence fails to show that the testatrix declared or published the instrument as her will in the presence of the subscribing witnesses, and which fails to show that the will was signed, or acknowledged by the testatrix to have been signed by her or by her authority in the presence of the subscribing witnesses, the proponents have not established that the will was executed according to law, and the probate thereof should be denied."

See also 68 C.J., Wills, § 366.

The decision in Reeves v. Duke, 192 Okl. 519, 137 P.2d 897, 147 A.L.R. 634, is sufficient to support the theory that the testator considered both his own writing and the typewritten portion as his will where he refers to it as "this will."

This instrument which the majority opinion will admit to probate is not a holo-

graphic will because it is not entirely in the handwriting of the testator as is required by Section 54, 84 O.S.1951, which is as follows:

"A holographic will is. one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this State, and need not be witnessed. R.L.1910, § 8347."

Counsel for the proponents of the purported will have come up with the ingenious idea that this instrument which is partly in typewriting and partly in handwriting is valid and should be admitted to probate for the fantastic reason that the handwriting is a codicil to the typewriting. It is my position that the typewritten part is not a will and the handwritten part is not a codicil. The handwritten part is only a continuation of the typewritten part and that combined, they constitute a will which was not attested and therefore cannot properly be admitted to probate.

The typewritten part of this unattested will is not signed, dated nor witnessed. It was not finished with a period. A casual inspection reveals that it is not in itself a will. Without the handwriting it is only a scrap of paper. The majority calls it a will on the strengh of Loveren v. Eaton, 80 N.H. 62, 113 A. 206, and Knoll v. Hart, 308 Pa. 223, 162 A. 228. Now this Loveren v. Eaton is cited in 68 C.J., Wills, § 1, which section defines wills. Most of the cases say that "a will" is the legal declaration of a man's intentions which he wills to be performed after his death. The writer of this will knew it was not complete when the typewriting stopped. He wrote:

"To my brother James I give ten dollars only. This will shall be complete unless hereafter altered, changed or rewritten.

"Witness my hand this April 6, 1947. Easter Sunday, 2:30 P.M.

"D. G. Johnson

"Dexter G. Johnson."

There was nothing legal about the typewriting until the handwriting was placed on the sheet of paper.

There is nothing about the handwriting that looks or reads like a codicil. It is just the part of the will which will had to be witnessed. It certainly does not look like the wills the testator prepared for his clients. There was nothing about the typewritten part to indicate that that was all the testator was going to write.

In 68 C.J., Wills, § 264, incomplete instruments are discussed. We quote from that Section:

"An instrument may be so incomplete and unfinished that courts will not declare it to be. a will. The presumption is against an incomplete and unfinished will, some cases holding that an instrument is not a will, where the testator intended some further act to complete it. To be effective as a will, the instrument must appear to be so far complete as to have left no part of the testator's intention unexpressed. * * *"

It is further to be noted that there was nothing in the handwriting which referred to a previous will. It spoke of "this will" and not of a previous will. There is nothing about this handwriting to indicate that the testator intended it to be a codicil. He was completing his will with the handwriting.

I think he intended the typewritten portion to be a part of his will, not the completed will. A will is to be interpreted by what is found in its "four corners" and there is nothing to indicate that the testator intended it to be anything but one instrument. Parol or extrinsic evidence should not be admitted to show the contrary when the signed will is one instrument.

Under no circumstances should this be considered a codicil and I can never subscribe to the proposition that a holographic codicil will validate as a will an instrument that is typewritten, unfinished as to content, undated, unsigned and unattested. Not a case has been cited where a holographic codicil validates an instrument as a will which was not dated, signed or attested and no reference made in the purported codicil to the preceding will. The majority opinion cites Hurley v. Blankinship, 313 Ky. 49,

229 S.W.2d 963, 21 A.L.R.2d 817, and the note thereunder. In the Hurley case the will under consideration was a holographic will which was not signed, but the testator in additional writing specifically stated that the writing was a codicil and signed it. Beall v. Cunningham, 3 B.Mon. 390, 42 Ky. 390, 39 Am.Dec. 469, cited in the Hurley case had to do with the republication of a revoked will. There the codicil was validly executed and referred to the paper as his will. In the English case of Doe v. Evans, 1 Cromp. & M. 42, 149 Eng.Reprint 307, reference to which is found in the note in 21 A.L.R.2d 829, the will was not signed. The codicil, two weeks later was signed and attested and expressly referred to the unexecuted will on the same paper.

In the case of Rogers v. Agricola, 176 Ark. 287, 3 S.W.2d 26, the will was typewritten, dated, signed but attested by only one witness. Later a holographic codicil was signed and dated and made reference to the typewritten will. I again repeat that it is to be remembered that the typewriting in question was not signed, dated or witnessed.

The two New Jersey cases of McCurdy v. Neall, 42 N.J.Eq. 333, 7 A. 566, and Smith v. Runkle, 86 N.J.Eq. 257, 98 A. 1086, are different from the case at bar. In the McCurdy case the codicil was executed with all due formalities and proved to have been so executed and expressly confirmed the will. From the report of Smith v. Runkle we cannot determine how the codicil was written but do not think it was holographic. The Supreme Court of Kentucky refused to approve a will under like circumstances in Sharp v. Wallace, 83 Ky. 584, and said:

"An unattested codicil, although wholly in the handwriting of the testator, cannot bring into operation as a will a paper which is neither in the handwriting of the testator nor attested, as required by the statute."

In Page on Wills, Section 545, Vol. 2, the rule is stated as follows:

"The holographic will is an apparent, though not a real exception to the general rule that a codicil, if properly executed, revives a prior will. Since a holographic will must be entirely in the handwriting of the testator, a holographic codicil, which is not attested, does not republish a prior will which is not entirely in the handwriting of testator. * * *"

When a codicil is properly executed it becomes a part of the will and together they are to be construed as one instrument and this is the reason a validly executed codicil will vitalize a will which has not been executed properly, but a holographic codicil which is not witnessed cannot validate a typewritten instrument as a will which has not been dated, signed or attested. See Leech's Estate, 236 Pa. 57, 84 A. 594, Sharp v. Wallace, supra, and 57 Am.Jur. Wills, Section 627. To rule otherwise, will permit a writing which is not entirely in the handwriting of the testator to be admitted to probate sans attestation. This should not be the law.

The Supreme Court of New York will not permit a properly executed codicil to republish a will which was defectively executed. By no means should this Court adopt a rule which would permit a holographic codicil to republish a defectively executed typewritten will.

No State has gone as far as the majority has in this case. I submit that this would be a poor rule to adopt because it would open the way for too much forgery. Experience has taught the Legislature that safeguards must be thrown up in so far as the execution of wills are concerned.

Something is attempted to be made of the fact that the testator was a lawyer but that would prove nothing as many eminent lawyers have failed to properly prepare and execute their own wills. The will of Samuel J. Tilden is a notable example.

This will was one complete will unattested and therefore not admissible to probate and to give this will the construction that the majority has placed upon it is wholly unwarranted. Why make a mockery of the plain provision of our statutes? Property may only descend by will when the will is executed in conformity with the statutes.

I dissent.