Victor C. JOHNSON and Beulah J. Johnson, Plaintiffs in Error,

v.

Joseph E. JOHNSON, Defendant in Error.
No. 35937.

Supreme Court of Oklahoma.

June 27, 1968.

Concurring Opinion July 2, 1968.

Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, Ames, Daugherty, Bynum, Black, Ashabranner & Rogers, Oklahoma City, for plaintiff in error, Beulah J. Johnson.

Suits & Weiss, by Fred E. Suits, John Amick, Oklahoma City, for petitioner, Victor H. Johnson, Executor of the Estate of Joseph E. Johnson.

WEST, Special Justice:

This proceeding involves the second petition of Victor H. Johnson, Executor of the Estate of Joseph E. Johnson, defendant in error, hereinafter referred to as Petitioner, to vacate and set aside the decision in Johnson v. Johnson, Okl., 279 P.2d 928. Plaintiff in error, Beulah J. Johnson and successor to the interest of her brother, Victor C. Johnson, will be referred to as Respondent.

Petitioner's first Petition to Vacate the decision in 279 P.2d 928, was decided by this Court in Johnson v. Johnson, Okl., 424 P.2d 414. That case was submitted by Stipulation and presented only questions of law. The facts and circumstances forming the basis for the principal question of law therein presented are set forth in detail in 424 P.2d 414, and the question was: Where a Justice secretly agrees to take bribes from an individual and does take them consistently, but such fact is unknown except to him and the bribe giver, does he thereby automatically become disqualified to participate in any further decision of this Court, so that his every vote thereafter is a nullity, even in cases where no wrongdoing occurred? We answered this question in the negative and denied Petitioner relief.

For the purpose of the stipulation and placing in issue the above legal question, there was no contention that there was any wrongdoing in the promulgation of 279 P. 2d 928, and Petitioner reserved the right to refile his petition alleging specific acts of wrongdoing. In this second Petition to Vacate, Petitioner has alleged specific acts of wrongdoing in obtaining the decision in

279 P.2d 928. The allegations of wrongdoing are primarily directed to the activities of N. S. Corn and Ben Arnold, both deceased, who were Justices of this Court when 279 P.2d 928 was adopted and who concurred in the opinion. The allegedly wrongful activities relied upon concern, inter alia, the relationship that the two former Justices (Corn and Arnold) had with a former Oklahoma City attorney who allegedly improperly influenced them when 279 P.2d 928 was being considered by the Court. The attorney referred to is the same attorney mentioned in 424 P.2d 414.

After hearing oral arguments, having the benefit of briefs and having carefully examined the exhibits attached to the pleadings, we determined that Petitioner had alleged sufficient facts in his second Petition to Vacate which would justify further proceedings in this matter. We referred the matter to a referee of this Court for the taking of testimony and evidence. The cause is now before this Court for disposition on its merits.

A transcript of the proceedings before the referee was submitted to each member of this Court and carefully considered. Briefly summarized, the evidence, together with matters of which we may take judicial notice, show the following:

(1) Prior to the adoption of 279 P.2d 928, the Court had unanimously adopted a previous opinion which, in effect, affirmed the disallowance of probate of Johnson's will by the County Court of Oklahoma County and by the District Court of Oklahoma County, including the concurrence of Corn and Arnold.

(2) Arnold, while he was a member of this Court and during the time 279 P.2d 928 was under consideration, was a close friend and confidant of the former Oklahoma City attorney.

(3) The Petition for Rehearing on the first decision was denied without dissent, but Arnold was recorded as being absent.

(4) Arnold subsequently moved to vacate the order denying the Petition for Rehearing on his own initiative.

(5) Arnold wrote the prevailing opinion (279 P.2d 928), although it was labeled as *per curiam,* despite dissents, and was the motivating force, as hereinafter explained, in reversing the former opinion and in adopting 279 P.2d 928.

(6) No new legal grounds were advanced after the matter was reopened by Arnold.

(7) During this time, Arnold committed the gross impropriety of accepting financial assistance from the former Oklahoma City attorney in the form of the latter's co-signature on a note for money borrowed by Arnold.

(8) Corn, over a long period of time, including the period when 279 P.2d 928 was being considered by the Court, was improperly involved with the former Oklahoma City attorney; accepted money from him and voted as directed. This improper conduct, its impropriety and effect thereof, are set forth in detail in 424 P.2d 414.

(9) Corn testified that he did not recall discussing this case with the former Oklahoma City attorney and that the latter had nothing to do with his vote in 279 P.2d 928, but he would have voted as directed by the former Oklahoma City attorney, had he been directed to do so.

(10) The former Oklahoma City attorney was not an attorney of record in this case and there is no evidence disclosing that he was or why he would be interested in the case.

In addition to the above evidence concerning Corn's relationship with the former Oklahoma City attorney, considerable evidence was presented in an effort to show that Corn purchased an automobile in Kansas in 1954 with money supplied by the former Oklahoma City attorney or from some other exterior source. However, the evidence is insufficient to establish that the former Oklahoma City attorney furnished the money or that the money was improperly obtained from any other source.

Petitioner also attempted to show that the former Oklahoma City attorney furnished the money for the purchase of an

automobile by Arnold. However, the evidence is insufficient to show that the former Oklahoma City attorney was financially involved in the purchase of the automobile.

Petitioner contends that when the acts and conduct of Corn, as disclosed in 424 P.2d 414 are considered in connection with the evidence above set forth, the same is sufficient to establish that Corn was improperly influenced when 279 P.2d 928 was adopted.

Petitioner also contends that the Minutes of this Court disclose that Arnold took an undue interest in the adoption of 279 P.2d 928, and was the motivating force in its adoption; and that when these matters are considered in connection with his other acts and conduct above set forth, the same is sufficient to establish that Arnold was improperly influenced when 279 P.2d 928 was adopted.

In considering Petitioner's contention that the records in the Court Clerk's office and the minutes of this Court support his contentions that Arnold was improperly influenced, took an undue interest in the case, and was therefore disqualified to participate, we will set forth what Petitioner argues the records and minutes disclose and what such records and minutes do disclose.

The records and minutes disclose that on December 15, 1953, an opinion was promulgated by this Court which affirmed the judgment of the trial court. Petitioner argues that Arnold voted with the majority in that opinion and voted with the majority in denying the petition for rehearing issued on February 2, 1954. Petitioner further argues that on February 15, 1954, eight days after the Supreme Court should have issued its mandate under its rules (because no application for permission to file a second petition for rehearing had been filed— and was never filed), Arnold moved the Court to vacate said order of February 2, 1954, and on May 17, 1954, Arnold presented a substitute opinion reversing the case with directions. In examining Petitioner's

argument, it is premised on the grounds that the procedure followed by this Court after the original opinion was adopted on December 15, 1953, was irregular and that Arnold was responsible for such irregularity.

■ Petitioner's argument that there was an irregularity in the procedure followed by this Court after the original opinion was promulgated on December 15, 1953, is not supported by evidence. Contrary to the argument of Petitioner, the Minutes of this Court disclose that Arnold did not vote to deny the Petition for Rehearing and Motion for Oral Argument, but was shown as being absent the same as another Justice. The Minutes also disclose that on Friday, February 5, 1954, three days after the Petition for Rehearing was denied, Arnold presented a motion to vacate the order denying the Petition for Rehearing and Motion for Oral Argument. All of the Justices concurred in this motion except Corn who "passed" and one other Justice who was absent. The motion was finally adopted on February 15, 1954, and by such adoption, Respondent's Petition for Rehearing and Motion for Oral Argument were reinstated and remained pending on the Court's docket.

The reasons for vacating the order of February 2, 1954, which denied the Petition for Rehearing and Motion for Oral Argument, are supported by the records. The records in the Court Clerk's office disclose that on December 30, 1953, Respondent filed her Petition for Rehearing and Motion for Oral Argument. On January 6, 1954, this Court issued a "Correction Order" which changed the language in a citation contained in the December 15, 1953 opinion. On February 2, 1954 (the same day the order denying petition for rehearing and motion for oral argument was issued) this Court issued an "Order" which *amended* the opinion promulgated on December 15, 1953, by deleting a syllabus and adding two additional syllabi, and by changing a portion of the body of the opinion.

If the order of February 2, 1954, amending the original opinion, was of such a nature as to constitute a different opinion under the Rules of the Supreme Court, Respondent would have had fifteen days from said date within which to file a Petition for Rehearing challenging the amended opinion. However, prior to the expiration of the fifteen-day period, the Court issued its order vacating its former order denying the Petition for Rehearing and Motion for Oral Argument, which reinstated Respondent's Petition for Rehearing and Motion for Oral Argument. Under such circumstances it was not necessary for Respondent to file another Petition for Rehearing nor an application for second Petition for Rehearing. As will be hereinafter shown, the *then* members of this Court, the Respondent and Petitioner must have recognized that the amendatory order of February 2, 1954, was of such nature as to constitute a different opinion. The order vacating the order denying the Petition for Rehearing merely reinstated the Petition for Rehearing. It did not amount to a determination of the case.

The Court, including all the Justices who had previously concurred in the order denying the Petition for Rehearing and Motion for Oral Argument and who dissented to the final opinion now sought to be vacated, must have recognized that the amendatory order of February 2, 1954, was of such nature as to constitute a different Opinion, for they concurred in and voted for the recommendation that the order denying the Petition for Rehearing and Motion for Oral Argument be vacated.

Respondent must have recognized that such amendatory order was of such nature as to constitute a different opinion. In a second brief subsequently filed by Respondent, he discusses the "Correction Orders" and sets forth the additional syllabi.

Petitioner also must have recognized the force and effect of the order amending the original opinion as he did not challenge the procedural aspects of this case until he filed his Petition to Vacate. In other words, when the original opinion was under consideration, Petitioner did not at that time complain that the mandate did not issue five days after the Petition for Rehearing had been denied; nor did he complain at that time that no application for filing second petition for rehearing was made; nor did he complain at that time of any irregularity in vacating the order denying the Petition for Rehearing and Motion for Oral Argument. In his brief in support of his Petition to Vacate, Petitioner does not discuss the force and effect of the order of February 2, 1954, amending the original opinion.

We have carefully examined the records in the Court Clerk's office and the Minutes of this Court and are unable to find therein any irregularity in the procedure following by the Court in promulgating the opinion which is sought to be vacated in the instant proceedings.

In 424 P.2d 414, we said that this Court has inherent equitable power to protect the integrity of our judgments and this power includes the power to conduct inquiries as to whether any judgment has been obtained by corrupt means; and the only limitation upon our power is that the investigation, once it is commenced, the rights of the parties to be affected must be safeguarded by the practice ordinarily observed in adversary proceedings. Under the authority of Oklahoma Company v. O'Neil, Okl., 431 P.2d 445, if an inquiry is conducted and the evidence submitted reasonably tends to establish to the satisfaction of this Court that a Justice was improperly influenced or was guilty of any wrongdoing in considering a particular case, this Court will set aside such Justice's vote in that case. However, public policy demands, and due regard for the stability of judgments and the need for finality of judgments, require that only those judgments wherein it is established that the same were obtained by improper means should be set aside. See 431 P.2d 445, supra.

█ In considering whether the evidence reasonably tends to establish to the

satisfaction of this Court that a decision was obtained by improper means, there is a presumption that it was not obtained by improper means, and in order to have an opinion vacated on the grounds that it was obtained by improper means, the evidence must be sufficient to overcome such presumption and reasonably establish to the satisfaction of this Court that such opinion was obtained by improper means.

This Court and the Citizens of this State are still appalled by the disclosures of wrongdoing by Corn and certain other former members of this Court. Such an atmosphere is conducive to suspicions. However, this Court must guard against the overreaction of vacating decisions which are not proven to be obtained by improper means. Although facts and circumstances in a case may create a suspicion that a decision rendered therein was obtained by improper means, such suspicion standing alone, does not constitute legal or eqitable grounds for vacating a decision of this Court.

When the evidence in this proceeding is measured by the above mentioned standards, such evidence does not reasonably tend to establish to the satisfaction of this Court that either Corn or Arnold were improperly influenced in their consideration of, or vote in, 279 P.2d 928, or that such decision was obtained by improper means. Although Corn may have admitted being improperly influenced in other cases, he denied that he acted improperly in the case under consideration and there is no evidence to the contrary. We have heretofore found that there was no irregularity in the procedure followed by the Court in promulgating 279 P.2d 928. Although the former Oklahoma City attorney may have been on friendly terms with Arnold and Corn and aided them financially, such fact does not reasonably establish to the satisfaction of this Court that such attorney was connected with or interested in the Johnson will case or that such financial aid was used to improperly influence either Corn or Arnold in deciding 279 P.2d 928. He was not an attorney of record and

there is no evidence establishing that he was or why he would be interested in that case. The affidavit signed by one of Petitioner's attorneys that he was advised that the former Oklahoma City attorney was interested and involved in the case was not confirmed or substantiated, although the individual who allegedly made the statement was a witness in these proceedings.

In connection with Petitioner's argument and our finding that Arnold was the motivating force in reversing the former opinion, Petitioner attempted to show that Arnold took an unusual interest in the case after the original opinion had been adopted and Petition for Rehearing was before this Court for consideration. Although Arnold did recommend that the order denying the Petition for Rehearing be vacated and did submit a substitute opinion which was adopted, and there is evidence that "he was just the power behind the discussion", these facts do not reasonably establish to the satisfaction of this Court that Arnold was *improperly* motivated.

The record discloses that a former member of this Court testified that it isn't unusual for a Judge to fight for his opinion and what he thinks the law is, and that "a Judge becomes or a Justice becomes an advocate for his views and, just like anyone, that is just the way the human mind operates, * * *."

In our opinion, if a Justice does strenuously express his opinion on what he believes the law is in a particular case, an inference should not be drawn therefrom that he was improperly motivated.

Proper consideration of a Petition for Rehearing is as much a responsibility of a Justice as proper consideration of an opinion in the first instance. If a Justice believes that an opinion is erroneous, it is his duty to point out to the Court the basis for his belief.

In connection with the labeling the opinion "Per Curiam", we find that this is not necessarily unusual. Whatever may have been the reason for labeling the opinion promulgated in 279 P.2d 928, "Per Cur-

iam", such reason is not contained in the record. Any finding as to the reason would be based on pure speculation and conjecture. We find that the fact that 279 P.2d 928 was labeled "Per Curiam" does not reasonably establish to the satisfaction of this Court that the reason therefor was because the author of such opinion was improperly influenced or motivated in his consideration of the case.

The Petition to Vacate the prior decision of this Court, Johnson v. Johnson, Okl., 279 P.2d 928, is denied and the Petition dismissed.

IRWIN, C. J., HODGES, V. C. J., and BALLAINE, HARBISON, LAVENDER, BERRY and ALLEN, JJ., concur.

MERRILL, J., concurring specially in result.

Chief Justice HALLEY, Vice Chief Justice JACKSON, and Justices DAVISON, WILLIAMS and BLACKBIRD, having certified their disqualification in this case, Honorable HORACE D. BALLAINE, Tulsa, Oklahoma, Honorable ROBERT HARBISON, Altus, Oklahoma, Honorable LEE R. WEST, Ada, Oklahoma, Honorable MAURICE MERRILL, Norman, Oklahoma, and Honorable SAMUEL T. ALLEN, Sapulpa, Oklahoma, were appointed Special Justices in their stead.

MERRILL, Special Justice (concurring in result):

With the judgment of the Court and with the legal propositions announced in the opinion, I concur. The petitioner had the burden of convincing a constitutional majority of this Court that the judgment under review clearly was entered under circumstances of judicial wrongdoing subjecting it to attack under the principle enunciated in Johnson v. Johnson, Okl., 424 P.2d 414, and given effect in Oklahoma Company v. O'Neil, Okl., 431 P.2d 445, and in Marshall v. Amos, Okl., 442 P.2d 500, now pending on rehearing. This convincement he was unable to achieve, for reasonably set forth in the opinion of the Court.

Therefore, inevitably, judgment of dismissal must be entered. It would not be proper for one to dissent therefrom.

However, as a matter of individual conscience, I must record my personal conviction that the record before us, combining the evidence and those matters which we notice judicially, establishes that the vote of Mr. Justice Arnold, if not the votes of some of the others comprising the majority, uniting to produce the decision reported in 279 P.2d 928, was impelled by illicit influence. This would require disregarding his vote. With that vote eliminated, the former decision would lack the necessary constitutional majority, and should be set aside in accordance with our action in the Oklahoma Company and the Marshall cases, previously cited.

It is true that we do not know either the source or the nature of this improper influence. If we are convinced that it existed and was the effective cause for the judge's action, I do not believe that we need to know whence it came or how it operated. In fairness to the ethical and distinguished counsel of record presenting the appeal in 1953, it should be made clear that there is not the slightest ground for suspicion that in any way they were involved in the impropriety. This accords with the regrettable pattern to which we have become familiar in all the cases in which bribery and undue influence specifically are shown to have been brought to bear. In all of them, the improper conduct was carried on behind the backs of counsel of record whose integrity is not subject to the least suspicion. Persons simply became aware of the existence of alleged influence and, in one way or another, made their own approaches. This simply adds to my conviction that inability to know the details of the illicit influence is unimportant. It is enough that known circumstances point conclusively to its existence in some form and to its effect on the decision. That conviction has been produced in me, but, since no one else finds more than suspicion in these circumstances, I cannot properly dissent from the judgment.