Strafford, }
April 1, 1913. }

### JOSEPH E. M. SMART & *a. v.* DURHAM.

Where a devise in trust directs that an ascertainable portion of the income shall be expended for the care and repair of a private cemetery and that the residue shall be applied to the support of public schools, the provision in favor of the burial place, if invalid, does not affect the trust as to the residue of the estate.

A trust otherwise valid is not defeated by the incompetency of the trustee named in the will.

A direction that land devised in trust for the support of public schools shall in no event be sold creates a perpetuity which is allowable in the case of a charitable trust; and a court of equity has power to direct a conveyance of the estate whenever such course becomes necessary.

WRIT OF ENTRY. Transferred without ruling from the September term, 1912, of the superior court by *Plummer,* J., on an agreed statement of facts.

The plaintiffs are heirs-at-law of Olinthus Doe. The defendants' title is derived from Doe's will, which directs his executors to pay his just debts and funeral expenses and then provides as follows: "All the rest, residue, and remainder of all the property of which I may die seized, whether real, personal, or mixed, wherever found and however situate, I give, bequeath, and devise unto the town of Durham aforesaid in trust for the following purposes and uses, to wit: To forever hold and improve all of said property and never under any circumstances to expend any portion of the principal thereof, and first, out of the net income, to use and appropriate so much as shall from time to time be needful, fitting, and proper to care for and keep in repair the cemetery or burial place on my homestead farm in said Durham in good and neat condition, including the graves and gravestones in said burial place, and in all re-

spects properly protected; and secondly, all the rest and remainder of the net income of all my said property shall be applied and expended from year to year forever in the support and maintenance of the common schools in said town of Durham; and I especially stipulate, order, and direct that said town of Durham shall in no event sell my homestead farm in said Durham."

It will require fifty dollars to put the cemetery into the condition required by the will and three dollars annually thereafter to maintain it. Besides the testator's grave, there are in the cemetery ten graves of his ancestors or relatives, all of the name of Doe, and nine unnamed graves.

*Foster & Foster* (of Maine) and *Pierce & Galloway* (*Mr. Pierce* and *Enoch Foster* orally), for the plaintiffs.

*Kivel & Hughes* and *Robert Doe* (*Mr. Doe* orally), for the defendants.

PARSONS, C. J.   After directing the trustees "first, out of the net income, to use and appropriate so much as shall from time to time be needful, fitting, and proper to care for and keep in repair the cemetery or burial place on my homestead farm in said Durham in good and neat condition, including the graves and gravestones in said burial place, and in all respects properly protected," the testator in imperative terms commands that "all the rest and remainder of the net income of all my said property shall be applied and expended from year to year forever in the support and maintenance of the common schools in said town of Durham." The testator presumably knew the extent of his property, the income probably derivable from it, and the small sum necessary to execute his wishes as to the cemetery. His main purpose, therefore, must have been to benefit the schools in the town of Durham; and to effect that purpose he required that all of the income which should not be expended in the care of the cemetery should "from year to year" be applied for the support of schools. That the latter is a valid gift in charity is conceded.

The plaintiffs claim the land upon the ground that, as they say, the trust for the care of the cemetery and graves is a private trust and void, and that the charitable trust depends upon the former and must fail with it. But there is no such dependence of the trust as to the residue upon the former as to render the latter incapable of execution if the former cannot be carried out. The amount.

required to be expended in the first trust is ascertainable. It has been found to be three dollars a year. Hence the testator's purpose was that of the income of his property three dollars each year should be expended for the cemetery and the balance for schools.

The established rule of the English cases, also approved in this country, is: If an ascertainable portion of a fund or an estate be given on a void trust and the residue on a good trust, the residue has the benefit of the failure of the prior trust. *St. Paul's Church* v. *Attorney-General,* 164 Mass. 188, 196; *Dexter* v. *Harvard College,* 176 Mass. 192, 196; *Chase* v. *Dickey,* 212 Mass. 555; *Kelly* v. *Nichols,* 17 R. I. 306; Tyssen Char. Beq. 87, 88, 468. Judge *Gray* says in *Jones* v. *Habersham,* 107 U. S. 174, 183: "In England there has been a difference of opinion upon the question whether the maintenance and repair of the tomb or monument of the donor is a good charitable use. Down to the time of the American Revolution, as by the civil law, it appears to have been held it was. . . . According to the later English cases, it is not." To the same effect, Professor Gray in 15 Harv. Law Rev. 517. See Tyssen Char. Beq., c. 7. The public purpose served by monuments and gravestones, for the assumed want of which the later cases have deemed gifts for their erection and maintenance private and hence not charitable, is declared in the Third Institute, cited by Judge *Gray,* where it is said: "These monuments do serve for four good uses and ends. First, for evidence and proof of descents and pedigrees. Secondly, what time he that is there buried deceased. Thirdly, for example, to follow the good, or to eschew the evill. Fourthly, to put the living in mind of their end, for all the sons of Adam must die." 3 Co. Inst. *202, *203. In this country, in the absence of a statute, the decisions appear to have followed the lead of the later English cases. *Piper* v. *Moulton,* 72 Me. 155; *Bates* v. *Bates,* 134 Mass. 110; *Kelly* v. *Nichols,* 17 R. I. 306; *Coit* v. *Comstock,* 51 Conn. 352.

It is the duty of the court to give effect to the intention of the testator as to any legal purpose. *Adams* v. *Page,* 76 N. H. 96; *French* v. *Lawrence,* 76 N. H. 234. If the testator knew that coupling a direction to keep the graves of himself and his ancestors "in good and neat condition . . . and in all respects properly protected" with the main purpose of his will would defeat that purpose and turn all his property over to these plaintiffs, whom, so far as the will shows, he did not intend should have it, his intentional incorporation of the destructive provision would be evidence

that he meant what he did not say. No statute of this state renders void the provision he apparently intended to make. If void, it is only because the common law of the state makes it so. No reported case so decides. If, now that the question is squarely presented, the English decisions since the separation are to be considered persuasive, the testator's intention can be effected only upon the theory that he knew what the English law was on the subject. If he did, he knew that in all cases where "a fund has been given to trustees upon trust to apply the income in keeping a tomb in repair, and as to the remainder for valid charitable purposes, . . . the result of the failure of the trust for the repair of the tomb is that the whole of the income becomes available for the charitable purpose." *Bird* v. *Lee*, [1901] 1 Ch. Div. 715, 718 (*Joyce*, J., quoting from Tudor Char. Tr. 45). As is said in the same opinion: "Testators who make bequests of this nature, if they know the law, really mean the legacy to go to the objects of the charitable bequest, with a moral obligation to keep up the tomb." The gift of the income for a charitable purpose is not destroyed because there is charged upon it an obligation which the law will not enforce. This obligation is called merely "honorary," to be performed or not as the trustees having custody of the fund think fit. *Bacon*, V. C., in *Dawson* v. *Small*, L. R. 18 Eq. Cas. 114, 118; *Hunter* v. *Bullock*, L. R. 14 Eq. Cas. 45; *Fisk* v. *Attorney-General*, L. R. 4 Eq. Cas. 521; *In re Williams*, L. R. 5 Ch. Div. 735. In the case last cited, the testator bequeathed a sum of money upon the trust to apply the income in keeping in repair certain tombs and directed further that if in any year the whole or part of the income should not be required for such purpose it should be disposed of for a named charity. *Malins*, V. C., says (*p.* 737): "In this case, if the first gift cannot take effect, there is no reason whatever why the whole fund should not be applied to the second object. If the first gift had taken effect, only a small part of the fund would have been absorbed. It is, therefore, only so much as is required for the illegal purpose which is abstracted. The gift being void, none is required, and consequently the entire fund remains applicable to the valid purpose."

As the clause of the will makes a valid charitable gift of the whole, even if the provision as to the cemetery is void, the plaintiffs as the testator's heirs-at-law have no title. It is therefore unnecessary to determine whether the law of this jurisdiction agrees with that of England prior to the Revolution in holding the preservation of monuments at the graves of deceased persons and the protection

of their place of burial to be matters of public benefit, although all the evidence to be drawn from legislative action and judicial decision tends to show that the English change of view has not been accepted here. R. S., *c.* 145, *s.* 1; *Ib.*, *c.* 219, *s.* 11; P. S., *c.* 40, *s.* 5; *Ib.*, *c.* 51, *s.* 8; Laws 1897, *c.* 6; Laws 1899, *c.* 40, *s.* 1; Laws 1901, *c.* 83; Laws 1907, *c.* 70; Laws 1911, *c.* 32, *s.* 1; *Bell* v. *Briggs*, 63 N. H. 592; *Gafney* v. *Kenison*, 64 N. H. 354; *Joy* v. *Fesler*, 67 N. H. 257; *Webster* v. *Sughrow*, 69 N. H. 380. By chapter 32, Laws of 1911, the placing in trust of "a reasonable sum of money for the perpetual care of the lot in which the body of their intestate is buried and the monuments thereon" by administrators or executors is authorized if approved by the judge of probate. In the judgment of the legislature, therefore, such a disposition of a part of the deceased's estate as this testator attempted to make may be essential to the decent sepulture of his remains. It may also be remarked that the law announced in the New England decisions above cited, following the modern English rule, has in all cases, and generally immediately, been changed by legislative action. Maine Laws 1883, *c.* 117; Mass. Laws 1884, *c.* 182; R. I. G. L., 1909, *c.* 318, *s.* 4; *Ib.*, *c.* 50, *s.* 37; Conn. G. S., 1888, *s.* 2951; *Green* v. *Hogan*, 153 Mass. 462, 466; *Bronson* v. *Strouse*, 57 Conn. 147.

Whether the trustee named in the will is competent to act is immaterial. *Glover* v. *Baker*, 76 N. H. 393. The direction that the real estate should not be sold does not create a perpetuity forbidden by law, but only a perpetuity allowable in the case of charitable trusts. Under direction of the court a necessary conveyance may be made. *Rolfe and Rumford Asylum* v. *Lefebre*, 69 N. H. 238.

*Case discharged.*

All concurred.