Hillsborough, }
Feb. 1, 1921. }

HARRY E. LOVEREN, *Ex'r, Ap'ee,. v.* PERRY A. EATON, JR.

A will and a codicil together constitute the entire testament; hence an appeal from the allowance of a will includes an appeal from the allowance of the codicil, and a motion of the testator to limit the issues, on such appeal, to the validity of the will should be denied.

Certain evidence was held to have been properly submitted to the jury on the issue of the testator's sanity: other evidence was held insufficient to warrant the inference that his will was procured by undue influence.

PROBATE APPEAL. Perry A. Eaton at his death September 28, 1917, left a will executed November 5, 1915, with a codicil executed September 7, 1917, which with some changes and additions ratified and confirmed the will.

Perry A. Eaton, Jr., a son of the deceased, duly appealed from the decree of the probate court sustaining and allowing the will of Perry A. Eaton, and assigned as the reasons for his appeal the mental incapacity of the testator and undue influence. The plaintiff moved to limit the trial to the validity of the will as distinguished from the codicil, and that a verdict be ordered for him upon the issues of mental capacity and undue influence as to each instrument. The motions were denied subject to exception. The jury found the testator was of sound mind at the execution of the will November 5, 1915, and disagreed on the other issues. The evidence relevant to the exceptions is stated in the opinion. Transferred from the September term, 1919, of the superior court by *Marble*, J.

*Warren, Howe & Wilson* (*Mr. Howe* orally), for the plaintiff.

*Doyle & Doyle, Myer Saidel* and *Timothy F. O'Connor* (*Mr. Saidel* orally), for the defendant.

PARSONS, C. J.   "A codicil is a part of the will, the two instruments making but one will. . . . There may be several codicils to one will and the whole will be taken as one."   Bouvier's Law Dict.; *Sherer* v. *Bishop,* 4 Bro. C. C. 55, 60.   "A will is to be considered in two lights, as to the testament and the instrument.   The testament is the result and effect in point of law, of what is the will; and that consists of all the parts; and a codicil is then a part of the will, all making but one testament."   *Fuller* v. *Hooper,* 2 Ves. Sen. 242.   "It is perfectly true, that if a man ratifies and confirms his last will, he ratifies and confirms it with every codicil, that has been added to it.   There is a great distinction between wills and codicils in this respect.   If there are two separate papers, both called wills, inconsistent with each other, it is not the rule to prove both in the Ecclesiastical Court.   The last is the will.   From the nature of the instrument it revokes the other.   If the last purports to be the whole will, a complete, substantive, will, they do not, I conceive, prove both.   Unless there is something to show, it was meant to be coupled with another instrument, it is not to be taken as a codicil.   But if it does purport to be coupled with another instrument, it is as much a part of that instrument, as if it was written upon the same paper."   *Crosbie* v. *MacDougal,* 4 Ves. Jun. 610, 616.   In law a man's will is the instrument by which he expresses his intentions as to the disposition of his property at his death.   It is immaterial of how many parts the instrument may be formed.   All constitute one will.   1 Red. Wills, *p.* 288; *Brown* v. *Ferren,* 73 N. H. 6, 7; *Hall* v. *Smith,* 61 N. H. 144.   "There may be many codicils there can be but one will."   1 Jar. Wills, *p.* 27, *note.*   The ordinary understanding is the same.   Webster and Century Dict's, Titles Codicil, Will; P. S., *c.* 2, *s.* 22.

The codicil of September 7, 1917, ratified and confirmed the will of November 5, 1915, subject to the minor changes then made.   If the decree of the probate court allowing the codicil as a part of Eaton's will remains in force it is immaterial whether there was, or not, a valid execution of the testamentary paper of the earlier date.   The appellant therefore could not have intended to exclude from his appeal the action of the court upon the testamentary effort of September 7, 1917.   There is nothing in the common use of language or in the legal interpretation of terms upon which to exclude that action from his attack upon the probate of the will.   The motion to so limit the issues was properly denied.

The testator's health, mental and physical, was affected by disease and his age.   The jury has found he was of sound mind November 5,

1915. The sufficiency of the evidence to sustain this verdict is not attacked. There was evidence tending to show increased impairment of his mental and physical faculties on September 7, 1917, three weeks before he died; medical evidence from the physician attending him in his last sickness and from experts called by the contestant tended to prove the testator's incapacity on that date. This evidence was positively contradicted by professional and lay witnesses, but as there was some evidence tending to disprove the issue of sanity there was no error in submitting the issue to the jury.

The only question remaining is the sufficiency of the evidence to authorize a finding that the will was produced by undue influence on the part of persons interested in the making of the will. There is evidence that the relations between the testator and his housekeeper, Mrs. Dow, whose influence is relied upon to invalidate the will, were more intimate than the law or the morals of the time approve and had been such for many years. They had lived together and she had cared for him in sickness and health for twenty years or more.

There is no evidence Mrs. Dow or any of the beneficiaries of the will knew anything about it until after it was executed. It was drawn and executed in the office of the scrivener. All information as to the details of the will were furnished by the testator and none of the beneficiaries were present when the will was drawn or executed or at any interview between the scrivener and the testator. In the absence of direct evidence showing control in the making of the will, the question is whether the provisions of the will are such that the jury may infer that they would not voluntarily have been made by such a man as the evidence discloses the testator to have been. The testator's wife died in 1912. He had two daughters and one son, numerous grandchildren and great-grandchildren and an estate of substantially $100,000. There was evidence of a will made in 1899 or 1900. This will was not produced and there was conflict in the evidence as to its provisions. But it made substantial gifts to each of the testator's children with the possible exception of one who was left only $200 in the will of 1915. A piece of real estate, the value of which did not appear, was given to Mrs. Dow and the residue to the testator's wife. The substantial change in the will of 1915 is in making the gifts to the children and Mrs. Dow, a certain sum each in money and in a gift of the residue to the son, one daughter and Mrs. Dow. For the gift to the son a spendthrift trust was created, the residue unused at the son's death to go to Mrs. Dow, a daughter and granddaughter. The will is attacked because of the gift to Mrs. Dow. As there were three

heirs, the son Perry A. Eaton would receive if there were no will about $33,000 as his share of the estate. There is given him in the gift to him of $10,000 and one-third of the residue about $30,000. The son alone appeals from the probate of the will. It seems clear that the spendthrift trust rather than the gift to Mrs. Dow is the cause of his dissatisfaction with the provision made by his father for him.

Mrs. Dow must have known that a provision of this sort would invite attack upon the will and if she influenced the making of the will she could not intentionally have caused the insertion of a provision having a possible tendency to destroy the gift to her. The most that the evidence tends to show is that Mrs. Dow had the opportunity and possibly the ability to influence the testator. The spendthrift trust does not tend to establish the successful exercise of such influence but the contrary. Neither does the gift to Mrs. Dow furnish evidence of undue influence successfully exerted by her. The question is, Is the will presented for the testator his will or is it the will of another which by fraud or force he was induced or compelled to adopt as his own? *Albee* v. *Osgood*, 79 N. H. 89. There was evidence that as far back as 1899 or 1900 the testator intended a substantial gift to Mrs. Dow. In 1915 his unchanged purpose is not evidence of a change by undue influence. The fact that he carried out in 1915 the purpose entertained by him fifteen years earlier is not evidence that the testator was coerced into making the gift. The mere fact of the gift to one who had so long sustained the relation Mrs. Dow had to him is not so unusual or unreasonable as to permit the inference that he did not wish to benefit her as he did in the will. Though not legally his wife he gave her practically a wife's share, which the change in his situation by the death of his wife in 1912 permitted him to do without materially affecting his direct heirs whom he wished to make objects of his bounty. The motion to order a verdict for the plaintiff upon the issue of undue influence in the execution of the will November 5, 1915, should have been granted. This verdict with the one found by the jury establishes the validity of the instrument of that date. The provisions of the codicil, if the issue of sanity is found for the plaintiff, become important; but of themselves they furnish no evidence of undue influence exerted by Mrs. Dow. The testator had since the making of the will built for himself a mausoleum or family tomb. The first gift is to the town for the care of this tomb. This sum, $200, the executor can without doubt obtain authority to pay to the town even if the codicil fails. *Smart* v. *Durham*, 77 N. H. 56,

60; Laws 1911, c. 32. The will contains a gift to each of the testator's grandchildren and great-grandchildren.     Since the date of the will another grandchild had been born.    A gift is made.to the new arrival. There was evidence that the testator had become reconciled to the daughter to whom only $200 had been given by the will.   She was, when the codicil was made, living with and caring for him.   She is · now given $5000 instead of $200.    Then the direct gift to the son is cut down from $10,000 to $5,000.    The increased gift to the daughter did not benefit Mrs. Dow.   By that gift alone the residuum, of which she was to have a third part, was so much diminished.    By the cancellation of one half of the gift to the son the loss to the residuum was restored, but Mrs. Dow's possible interest in the sum left to the son was equally reduced.   Two pieces of evidence are relied upon as furnishing a motive and proof of the actual influence of Mrs. Dow in the making of the codicil.   In 1905, in reply to some criticism by the son of the relations between the testator and Mrs. Dow she said to him, "Some day you will be sorry for this."   When the codicil was being drawn and executed, Mrs. Dow was in and out of the room but there was no evidence she made any suggestions or took any part in · the business.   After it was completed she said to the daughter whose legacy was increased thereby, "You have nothing to feel bad for, after your father has done what he has for you.   You can thank me for that."   If the provision for this daughter were at all unreasonable, one that under the circumstances the testator would not be likely to make, this remark might be evidence of the compelling influence of another in its making.   But the testator was nearing death, his daughter was caring for him.   It was natural that as life drew to its close under these circumstances he should repent of the severe penalty which his displeasure had visited upon his daughter and to some extent lighten its severity.   If the remark amounts to more than a claim of successful appeal to the father in behalf of the daughter, it is at most a mere scintilla of too little weight to justify a verdict.   As to Mrs. Dow's hostility, to Perry, Jr., authorizing the conclusion that her influence coerced the testator into cutting down his legacy, what has already been said answers the contention.   It cannot reasonably be inferred that Mrs. Dow interfered at the last moment to create a change in the will which did not materially benefit her and the effect of which would be to increase the probability of an attack upon the will and the possible destruction of her legacy.   The evidence is of too little weight to authorize a verdict, even if it has some tendency to prove the issue.   The change in the will does not furnish evidence

that she made it instead of Perry Eaton. A verdict should have been ordered on this issue also.

The issue undetermined is that of the mental competency of the testator September 7, 1917.

*Exceptions as to issue of undue influence sustained: exception as to the issue of sanity overruled.*

All concurred.