Betty Lou MILLER, April Teresa Miller, and William Steffen Miller, Appellants,

v.

FIRST NATIONAL BANK & TRUST CO., Executor, Estate of William Miller, Jr., Deceased; Frances L. Miller and Jerry Wilson, Appellees.

### No. 51901.

Supreme Court of Oklahoma.

Nov. 10, 1981.

Rehearing Denied Dec. 14, 1981.

Dennis J. Downing, Tulsa, for appellants.

Fred W. Woodson, Tulsa, for appellee First National Bank & Trust Co.

Floyd L. Walker, Walker, Jackman & Adamson, Inc., Tulsa, for appellees Frances L. Miller and Jerry Wilson.

HODGES, Justice.

By statute,[1] "If, after making a will the testator is divorced," all provisions in favor of the testator's former spouse are revoked. The question then arises, does this statute also apply to those provisions in favor of the former spouse in a trust instrument which was executed by the testator at the same time? Under the facts of this case, we answer affirmatively.

On October 15, 1971, William J. Miller, Jr., executed two instruments, one entitled "Last Will and Testament," and the other entitled "Life Insurance Trust." These instruments were prepared simultaneously as part of his estate plan. Dr. Miller was married to Frances L. Miller, appellee, when he made and executed these instruments. This marriage ended in divorce January 27, 1976, eight months before his death on September 11, 1976. William J. Miller, Jr. had been married three times. His second marriage, to Betty Lou Miller, was terminated by divorce on March 9, 1971. Six months later he married Frances. Dr. Miller was survived by a daughter, April Teresa Miller Mann, and a minor son, William Steffen Miller, appellants. Betty Lou Miller, mother of William, is co-appellant.

The Last Will and Testament was admitted to probate on October 1, 1976. The First National Bank & Trust Company, appellee, was appointed executor. Article III of the will devised the residue of Dr. Miller's estate[2] to First National Bank in trust to become a part of the corpus of the Life Insurance Trust.[3] The bank, as executor, brought an action under the Declaratory Judgment Act, 12 O.S.Supp.1979 § 1651, in the District Court of Tulsa County for the purpose of determining its rights, duties, obligations and powers under the terms of the two instruments.

The District Court found that: pursuant to 84 O.S.1971 § 114, any bequests in the instrument designated "Last Will and Testament" by the decedent to Frances L. Miller were invalidated; the Last Will and Testament and the Life Insurance Trust are separate and distinct instruments; and 84 O.S. 1971 § 114 does not impair the provision in the trust agreement as to Frances L. Miller.

Appellants, Betty Lou Miller, as guardian, and April Teresa Miller Mann and William Steffen Miller, as heirs-at-law of the deceased, have appealed to this Court seeking a reversal of the district court's ruling.

---

1. Title 84 O.S.1971 § 114 was amended in 1975 to provide:
   "If, after making a will, the testator is divorced, all provisions in such will in favor of the testator's spouse so divorced are thereby revoked. Annulment of the testator's marriage shall have the same effect as a divorce. Provided, however, this section shall not apply if the decree of divorce or of annulment is vacated or the testator remarries his former spouse."

2. Dr. Miller's "Last Will and Testament" was comprised of five Articles. Articles I and V directed the executor to administer the estate, pay debts, funeral expenses and taxes. Article II bequeathed to Frances L. Miller the homestead and all personal effects. Article III stated:
   "I have heretofore created an inter vivos trust under and by virtue of a certain trust agreement under date of the 15th day of October, 1971, between myself, as Trustor, and First National Bank & Trust Company ... as Trustee. I hereby give, devise and bequeath the rest, residue and remainder of my estate, real, personal, or mixed, of what-soever kind and character, and wherever situated, unto First National Bank ... as Trustee of such trust, and said residue shall become a part of the corpus thereof and shall be held, administered and disposed of pursuant to the terms of said trust agreement." Article IV named contingent legatees should the trust beneficiaries predecease Dr. Miller.

3. The trust was to be funded by the proceeds from Dr. Miller's life insurance policies. The policies were made payable to First National as beneficiary. First National, as trustee, was directed to pay $50,000.00 to Frances L. Miller if such amount was left after the payment of debts and expenses. Jerry Wilson, son of Frances L. Miller, April Teresa Miller Mann and William Steffen Miller were to each receive $25,000.00 if such an amount existed after the payment to Frances L. Miller was satisfied. Then the residue, if any was remaining of the trust, was to be distributed to Frances L. Miller at $750.00 a month for life, or as the trustee so deemed as necessary for her welfare and comfort.

## I

Appellants contend that William J. Miller, Jr.'s will incorporated the Life Insurance Trust and that provisions in the trust in favor of Frances L. Miller, divorced spouse of testator, were revoked by 84 O.S. 1971 § 114. The appellants assert that the legislative intent in enacting this particular statute was to provide that the divorced person who had overlooked changing his will would not suffer the consequences of his oversight; and that it was not Dr. Miller's intention that the bulk of his estate should go to a divorced spouse who was not the mother of his children.

This is a case of first impression. The issue presented in this case is whether the trust was incorporated by reference into the will, thereby invalidating those provisions for the decedent's divorced spouse pursuant to 84 O.S.1971 § 114. While the language in § 114 refers to "Will" without specifically defining it, this Court has stated that an instrument may be too defective to be entitled to probate but if it is testamentary in character it is a will.[4] It was further defined as "the instrument by which [a man] expresses his intention as to the disposition of his property at his death.[5] A will is a declaration of what a person desires to be done after death. It is revocable during one's lifetime, inoperative until death, and applicable to the situation that exists at the time of death.[6]

The primary purpose in construction of wills is to ascertain and give effect to the intention of the testator.[7] Appellants contend that the trust agreement was incorporated by reference into the will and, therefore, is operative as a part thereof. To incorporate an extraneous instrument into a will by reference, the paper must be in existence when the will is executed and must be referred to in such a way as to reasonably identify the document. The reference must show testator's intention to incorporate the instrument into his will, "or at least his intention that the instrument should operate with his will in disposing of property left by him at his death."[8] The doctrine of incorporation by reference is recognized in Oklahoma,[9] and by a majority of other jurisdictions.[10] Even in jurisdictions which do not recognize incorporation by reference, it has been held that where there was clear reference to an existing trust agreement, the *effect* of incorporation may be given and the rule against the doctrine will not be carried to a narrowly logical extreme.[11]

Decedent's will clearly identifies the trust. The trust was in existence when the will was executed. The reference exhibits decedent's intention that the trust operate with his will to dispose of his property. He signed the will and the trust contemporaneously, indicating one instrument and a scheme of testamentary disposition. Article II of the will gave Frances only those things to which she would have been statutorily entitled. The remainder of the will is directed to the trust. The will without the trust has no meaning or value to the decedent's estate plan.

It was Frances Miller's status as wife of the testator which was the main inducement for making testamentary provisions for her. They were subsequently divorced and a property settlement was executed between the parties. When testator died eight months later without having revoked

4. *Johnson v. Johnson, 279 P.2d 928, 930 (Okl. 1954).*

5. *Loveren v. Eaton, 80 N.H. 62, 113 A. 206 (1921).*

6. T. Atkinson, "The Law of Wills," p. 1 (2d ed. 1953).

7. *Matter of Estate of Anderson, 571 P.2d 880 (Okl.1977); McAllister v. Long, 206 Okl. 623, 246 P.2d 352 (1952).*

8. *Bottrell v. Spengler, 343 Ill. 476, 175 N.E. 781 (1931).*

9. *In re Fullerton's Estate, 375 P.2d 933 (Okl. 1962).*

10. *Note 6, supra, p. 386.*

11. *Matter of Rausch, 258 N.Y. 327, 179 N.E. 755 (1932); Matter of Fowles, 222 N.Y. 222, 118 N.E. 611 (1918).*

any provisions in the trust or the will relating to his former spouse, those provisions were statutorily invalidated, giving effect to the purpose and intent of § 114.

REVERSED.

IRWIN, C. J., BARNES, V. C. J., and DOOLIN, and OPALA, JJ., concur.

LAVENDER, SIMMS and HARGRAVE, JJ., dissent.

HARGRAVE, Justice, dissenting:

The District Court, on December 28, 1977, found *inter alia* that pursuant to 84 O.S. 1971 § 114,[1] any bequests in the document designated "Last Will and Testament" of real or personal property by the decedent to Frances L. Miller were invalidated, but that the statute did not impair or invalidate any provisions in the document designated "Life Insurance Trust Agreement" relating to Frances L. Miller.

Betty Lou Miller, in her capacity as guardian, and April Teresa Miller Mann and William Steffen Miller, as heirs-at-law of the decedent, have appealed to this Court seeking a reversal of the District Court's finding that the provisions in the trust agreement were not invalidated by Section 114. As their inheritance has been severely limited, they argue that the two instruments are not separate and distinct as found by the District Court and that any trust benefits relating to Frances L. Miller have been revoked by the decedent's divorce.

This contention is based upon a broad interpretation of the language found in 84 O.S.1971 § 114. Section 114 states in part:

If, after making a Will, the Testator is divorced, all provisions in such Will in favor of the Testator's spouse so divorced, are thereby revoked.

The appellants argue that even though the legislature used the term "will" in the statute without defining it, this Court had previously defined it "as the instrument by which [a man] expresses his intention as to the disposition of his property at his death." *Johnson v. Johnson,* 279 P.2d 928, 930 (Okl. 1954), (quoting *Loveren v. Eaton,* 80 N.H. 62, 63, 113 A. 206, 207 (1921)). This argument seems to be based on the "rule in Oklahoma that the primary consideration in construing wills is to ascertain the intention of the testator in making the same...." *McAllister v. Long,* 206 Okl. 623, 246 P.2d 352, 353 (1952); Accord, 84 O.S.1971 § 151. However, to include this trust document or all documents providing for property distribution in the will, as the appellants so desire, "would mean that joint tenancy deeds, joint bank accounts, bonds payable on death to another, and similar instruments, would constitute the 'will' of [a] decedent and would have to be admitted to probate. It is clear that such documents are not a part of the probate estate and are not a part of a decedent's will." *In re Estate of Meskimen,* 39 Ill.2d 415, 421, 235 N.E.2d 619, 623 (1968).

The appellants also contend that the trust agreement has been incorporated by reference into the will. Since the trust agreement was not executed in accordance with the statutory formalities required for testamentary dispositions, 84 O.S.Supp.1979 § 55, if it is deemed a testamentary disposition then it fails. However, if deemed nontestamentary, the document could still be used to determine property distribution, if as the appellants contend, the doctrine of incorporation by reference is used since "[t]he doctrine ... enables the admission into probate of certain nontestamentary writings, executed without statutory formalities." *In re Estate of Herzog, 162 Mont. 410, 513 P.2d 9, 11 (1973).* Therefore, if the doctrine is employed, (as the will provisions relating to Frances L. Miller were statutorily revoked) the appellants argue the trust provisions relating to Frances L. Miller would be statutorily revoked since the trust provisions would be treated as if set forth at length in the will.

---

1. The statute was amended in 1975. The added language, however, is not relevant to this decision.

But in order to use the doctrine, several requirements must be met. While the exact wording of the requirements varies in the jurisdictions recognizing the doctrine, all jurisdictions acknowledge that:

(1) the extrinsic paper must be in existence at the time the will makes reference to it;

(2) the will must identify the paper by a sufficiently certain description ...; and

(3) it must appear that the testator *intended to incorporate* the paper for the purpose of carrying out his testamentary desires.

*In re Estate of Foxworth, 240 Cal.App.2d 784, 50 Cal.Rptr. 237, 240 (1966);* (emphasis added), *e.g., In re Estate of Meskimen, 39 Ill.2d 415, 418, 235 N.E.2d 619, 622 (1968).*

Oklahoma recognized the doctrine of incorporation by reference in *In re Fullerton's Estate, 375 P.2d 933 (Okl.1962),* which involved *inter alia* a contention that assets were being distributed in accordance with inaccurately identified documents, not admitted to probate, and that such distribution was void.

In applying the doctrine to the facts at bar, it is clear that only two of the three requirements are satisfied. The language of Article III gives no indication that Dr. Miller intended to incorporate the terms of the trust into the will. The language of Article III is for identification, not for incorporation. The trust is identified and the residuary legatee is identified. "Mere reference to a document is not enough. In order to incorporate a document by reference the intention of the testator must be clearly expressed in his will." *Taylor v. Republic National Bank, 452 S.W.2d 560, 563 (Tex.Civ.App.1970).* While the language in the *Taylor* will was much more vague than in the present case, the language in Dr. Miller's will still does nothing more than make reference to the trust.

As stated by the California Supreme Court in *Wells Fargo Bank & Union Trust Co. v. Superior Court, 32 Cal.2d 1, 7, 193 P.2d 721, 724 (1948):*

It is neither necessary nor proper to apply the doctrine of incorporation by reference to a valid and operative inter vivos trust when the trustor ... [expresses] no intention in the will or in the inter vivos trust instrument that the latter be incorporated into the will.

The California court further stated that the question is not whether such an incorporation would be valid for that question, if pertinent, should have been determined during the probate proceeding. The question is whether the will ... provided for such incorporation. The doctrine ... cannot be applied without some showing that the testator intended to incorporate the non-testamentary document into his will. In carrying out the general intention of the testator and the policy of the law against intestacy some courts interpret a reference to non-testamentary documents as indicative of an intention to incorporate by reference certain otherwise inoperative non-testamentary instruments into the testator's will.

*Id.* (Citations omitted).

But, as in *Wells-Fargo,* the non-testamentary document—the trust agreement—is neither inoperative nor invalid. There is no reason to incorporate the trust provisions into the will other than to prevent any benefits flowing to Frances L. Miller, and since no indication can be found in the four corners of the will that the testator desired to incorporate, I would determine the trust agreement has not been incorporated by reference into the will.

In *In re Meskimen, 39 Ill.2d 415, 235 N.E.2d 619 (1968),* the Illinois Supreme Court addressed this same issue. Although the factual situation varied somewhat in that it was the surviving spouse who would *not* benefit from the trust provisions, the language of the will's residuary clause, as did the language of Dr. Miller's residuary clause, directed the trustee bank, under a trust agreement dated the same day as the will, to manage and distribute the property in accordance with the terms of the trust agreement. The Illinois spouse argued that "the 'will' of the decedent should be con-

strued to include all instruments providing for the distribution of the decedent's property upon her death, and . . . that the trust instrument must be incorporated by reference and made a part of the will." *Id.* at 417, *235 N.E.2d* at 621.

The Illinois Court found that

the language of the will does not disclose any intention to incorporate the terms of the document into the will. Instead, the will, like most "pour over" wills, manifested an intent to give [the] decedent's property to the trustee to be administered as part of the *inter vivos* trust and did not purport to create a testamentary trust. It has been said that one of the purposes of an *inter vivos* trust, into which assets are "poured" by will, is to avoid publicity concerning family and business plans which would occur if these plans were incorporated into a will which became public record on being admitted to probate. To incorporate the trust by reference would defeat this purpose.

*Id.* at 418, *235 N.E.2d* at 622.

Support can be found in 84 O.S.1971 § 301 for the residuary "pour over" into the trust. Section 301 states in part:

A devise or bequest . . . may be made by a will to the trustee . . . of a trust established . . . by the testator (including a funded or *unfunded life insurance trust,* although the testator has reserved any or all rights of ownership of the insurance contracts) if the trust is identified in the testator's will and its terms are set forth in a written instrument, other than a will, executed . . . concurrently with the execution of the testator's will. . . . The devise or bequest shall not be invalid because the trust is amendable or revocable. . . . (Emphasis added).

The Colorado Court of Appeals in *In re Estate of Allen, 28 Colo.App. 574, 475 P.2d 629 (1970),* in construing a similarly worded statute stated that the purpose of the statute is twofold.

First, it removes certain conceptual difficulties which arise from the application of either of the two doctrines [the doctrine of incorporation by reference and

the doctrine of independent significance]; and second, it validates testamentary dispositions of property to existing trusts. . . .

*Id.* at 577, *475 P.2d* at 630.

Bequests to life insurance trusts, like the one Dr. Miller had prepared, have been sustained under the doctrine of independent significance. The Illinois Supreme Court in *In re Meskimen* sustained the bequest under the doctrine, stating that

In carrying out the intent of the testator reference may be made to a document having independent significance without the necessity of strict compliance with the formal rules for incorporating this document into the will. *Inter vivos* trusts . . . have such independent significance entirely apart from the will. They establish a fiduciary relationship between the decedent and the trustee and grant powers and impose duties upon the trustee. Without regard to the will, the trust documents and the trust relationship thus created come into existence.

*39 Ill.2d* at 419, *235 N.E.2d* at 622; See *I. A. Scott, The Law of Trusts,* § 54.3, at 390 (3d Ed. 1967); *Id.* § 57.3 at 493–94.

When a will has been admitted to probate, when the trustee named as a legatee in the will has been properly identified, when the executor stands ready to deliver the property to the trustee and the trustee stands ready to receive it, the act of testation is finished; the property has come to rest in the hands of the legatee named in the will (the trustee), the will has served its full purpose as a testamentary instrument, the executor and the probate court have fully performed their functions in the administration of the estate; the future ownership and management of the property by the trustee is to be controlled by the terms of the living trust agreement, . . . and that *future ownership is not part of the testamentary process* which was set in motion when the will was offered for probate.

McClanahan, *Bequests to an Existing Trust—Problems and Suggested Remedies,* 47 Cal.L.Rev. 267, 277 n.51 (1959).

The controlling statute is properly considered to be 84 O.S.1971 § 301 insofar as it provides that unless the testator's will provides otherwise property subject to a bequest to a trustee *shall* not be deemed to be held under a testamentary trust of the trustor but *shall* become a part of the trust, and *shall* be administered and disposed of in accordance with the provisions of the instrument setting forth the terms of the trust.[2]

Therefore, based upon all the foregoing authorities, I would hold the District Court did not err in determining that while 84 O.S.1971 § 114 invalidated the provisions in the will relating to Frances L. Miller, the statute did not invalidate the provisions in the *inter vivos* trust agreement relating to Frances L. Miller.

I am authorized to state that LAVENDER and SIMMS, JJ., concur with the views expressed in this dissenting opinion.

---

**2.** In full, 84 O.S.1971 § 301 reads:

"A devise or bequest, the validity of which is determinable by the law of this State, may be made by a will to the trustee or trustees of a trust established or to be established by the testator or by the testator and some other person or persons or by some other person or persons (including a funded or unfunded life insurance trust, although the trustor has reserved any or all rights of ownership of the insurance contracts) if the trust is identified in the testator's will and its terms are set forth in a written instrument other than a will, executed before or concurrently with the execution of the testator's will or in the valid last will of a person who has predeceased the testator, regardless of the existence, size, or character of the corpus of the trust. The devise or bequest shall not be invalid because the trust is amendable or revocable, or both, or because the trust was amended after the execution of the will or after the death of the testabor. Unless the testator's will provides otherwise, the property so devised or bequeathed (a) shall not be deemed to be held under a testamentary trust of the testator but shall become a part of the trust to which it is given and (b) shall be administered and disposed of in accordance with the provisions of the instrument or will setting forth the terms of the trust, including any amendments thereto made before the death of the testator, regardless of whether made before or after the execution of the testator's will, and, if the testator's will so provides, including any amendments to the trust made after the death of the testator. A revocation or termination of the trust before the death of the testator shall cause the devise or bequest to lapse.