OSCN Found Document:ROGERS v. ESTATE OF PRATT

 

 
 

 
 ROGERS v. ESTATE OF PRATT
2020 OK 27
Case Number: 117671
Decided: 05/05/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA 
Cite as: 2020 OK 27, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

ROBINSON KENNETH ROGERS, Plaintiff/Appellant,
v.
ESTATE OF JUDITH K. PRATT DECEASED, Defendant/Appellee.
CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION I
Tim Mills, Trial Judge
Â¶0 The decedent, Judith K. Pratt, left her entire estate to her caregivers and friends, neglecting any family. Her son, the plaintiff/appellant, Robinson Kenneth Rogers, which she gave up for adoption at birth, whom she later established a relationship with, objected to the admittance of Pratt's will to probate. He alleged that he was a pretermitted heir, and that the will was procured as the result of undue influence by Pratt's caregivers. The trial court determined that Rogers was not a pretermitted heir and admitted the will to probate. Rogers appealed and the Court of Civil Appeals affirmed. We granted certiorari to determine Roger's status as a pretermitted heir. We hold that the child placed for adoption qualifies as a pretermitted heir and that the evidence was insufficient to show that the omission was intentional.
COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT REVERSED AND REMANDED.
Kimberly Adams, Monte Brown, McAlester, Oklahoma, for Plaintiff/Appellant.
Bill Layden, Jim B. Miller, McAlester, Oklahoma, for Defendant/Appellee.
KAUGER, J.:
Â¶1 We granted certiorari to address whether a child placed for adoption was a pretermitted heir under the terms of the will. We hold that the child placed for adoption qualifies as a pretermitted heir and that the evidence was insufficient to show that the omission was intentional.
[1]
FACTS
Â¶2 On June 5, 1962, the decedent, Judith K. Pratt (birth mother/Pratt) gave birth to a baby boy in Ardmore, Oklahoma. Shortly after birth, Eicie and A.K. Rogers adopted the baby boy on June 7, 1962, naming him Robinson Kenneth Rogers (son/Rogers). The birth mother later married Leland Pratt, but she had no other children.
Â¶3 Sometime in approximately 1980, the birth mother and her son reconnected, after she found him working in Ardmore, Oklahoma. The two established a relationship and he lived with Pratt and her husband in Texas for 6 or 7 months after his adoptive father died. Rogers also met Pratt's sisters, Carlene and Patricia. After Rogers moved back to Ardmore, he talked to his birth mother a couple of times on the phone, but then lost track of her.
Â¶4 Pratt's husband died in 2007. Prior to his death, she was very social and family oriented. She often visited and spent holidays with family and friends. After her husband's death, Pratt became depressed and isolated herself from friends and family.
Â¶5 By the summer of 2017, Pratt was chronically ill with lung cancer. She had let her house deteriorate around her. She had no running water or working septic, and she stayed in an RV next to the dilapidated house. In July of 2017, Pratt contacted a lawyer to do estate planning. She also moved in with Cerita Morley (Morley), so that Morley could help care for her.
Â¶6 Morley called the lawyer on September 6, 2017, to notify him that Pratt was in bad shape, was going to have a medical procedure, and that she needed her estate planning done by September 13, 2017. On September 13, 2017, Pratt appointed Morley and Morley's daughter, Stacey Parker (Parker), as co-agents for durable power of attorney for healthcare.
Â¶7 On September 14, 2017, Pratt had a procedure to insert a mediport for lung cancer treatment. During this procedure, the doctor discovered a large protruding mass on her anus. Apparently, she had discovered it two years earlier, but never sought treatment due to embarrassment. On the way home from the procedure, Morley drove Pratt to her lawyer's office where he delivered her a drafted will to her car. Pratt picked up the will from her car after having been under anesthesia and had been taking Xanax as well as oxycodone at the time. The next day, she executed her last will and testament in her bed at Morely's house in front of two witnesses and a notary. Although she did not know the witnesses or notary, they all agreed she was aware of what she was doing, and that she appeared very competent.
Â¶8 The will provided in pertinent part:
I, Judith Pratt, a resident of McAlester, Pittsburg County, State of Oklahoma, being of sound mind, being in good health and sensible of the uncertainly of life and the certainty of death, and desiring to make disposition of all my affairs, do hereby declare the following to be my Last Will and Testament, hereby revoking any and all other Wills and Codicils that I previously may have executed.
SECTION 1
I further state and declare that I am a widow; that my husband, Leland Pratt, has predeceased me; that I have no children. I further state that I have numerous other living relatives and that it is my specific intention that they or their heirs receive absolutely nothing from my estate, except as stated hereinafter. Any legatee or devisee hereinafter named in the Will shall not be deemed to have survived me if he or she dies within sixty (60) days of my death. . . .
SECTION VII
All the rest, residue and remainder of my property, of every nature and description, and of every kind and wheresoever situated, whether vested or contingent at the time of my death and whether acquired before or after the execution of this my last Will and Testament including in such rest, residue and remainder, and property over which at the time of my death, I shall have any power of testamentary disposition, I give, devise, and bequeath to the following persons in equal shares, share and share alike, to wit:
Tonnah Johnson, Rocky C. Johnson, Cerita Morley, Frankie Johnson, Rocky W. Johnson, Geoffrey C. Morley, Samatha Morley Parker, Tina Johnson, Stay Parker and Bobby Parker.
The will also made a few specific bequests to a few other people, and directed that Pratt's real property, vehicles, trailer, guns, antiques, items located on the real property, and coins and jewelry be sold with the proceeds applied to Section VII.
Â¶9 In January of 2018, Pratt moved from Morley's house into Parker's house (Morley's daughter) for continued care. According to Parker, Pratt referred to her as her niece, but in reality, Parker's brother was married to Pratt's actual niece. Pratt died at Parker's house on June 5, 2018, and her family was not notified of the death. On June 13, 2018, Morley, as personal representative, filed Pratt's will with her Petition for Probate in the District Court of Pittsburg County, Oklahoma.
Â¶10 On July 25, 2018, Pratt's sister, Carlene Wheller filed an objection to the petition to probate the will and appointment of an executor. She alleged that Morley and her daughter, Parker, were Pratt's primary caregivers and they unduly influenced Pratt to procure the will, leaving them to substantially benefit by it. She also alleged that Pratt lacked the testamentary capacity to execute the will.
Â¶11 On July 27, 2018, Rogers filed an application for his share of Pratt's estate as a pretermitted child. On September 5, 2018, Rogers also filed an objection to admission of the will, insisting that Pratt was not competent or free from duress, menace, fraud or undue influence when she made her will. The cause proceeded to trial on October 23, 2018. A dozen witnesses participated in the proceedings including: the attorney who drafted the will, the woman who notarized the will, the two witnesses to the will, Rogers, Parker, Pratt's sister Pat, Pat's daughter, three of Pratt's friends, and Pratt's doctor who performed the mediport procedure.
Â¶12 On November 20, 2018, the trial court entered a minute order admitting the will to probate. It also denied Roger's application for appointment as personal representative, but reserved the issue of his share as an omitted child for another hearing. The next day, Rogers filed a motion for reconsideration and/or a stay of the proceedings. The trial court held a hearing on the motion for reconsideration on December 19, 2018.
Â¶13 On December 27, 2018, the trial court held that:

1. The will was not ambiguous;
2. Pratt's statement that she had no children was presumably false; and
3. Pratt's statement combined with a complete disposition of her estate evidenced an intent to exclude Rogers.
Consequently, the court denied Roger's application for his share as an omitted child. On January 3, 2019, the trial court entered an order incorporating previous rulings into a final ruling admitting the will to probate.
Â¶14 On January 7, 2019, Rogers appealed. The Court of Civil Appeals affirmed. We granted certiorari on February 10, 2020, to address the issue of how an adoption affects the rights of a child to inherit from a biological parent.
I.
THE CHILD PLACED FOR ADOPTION QUALIFIES AS A PRETERMITTED HEIR.
Â¶15 The estate admits that an adopted child is entitled to inherit from both biological and adoptive parents, but argues that Rogers was intentionally omitted from the will because Pratt stated that she had no children and she otherwise disposed of her entire estate to specific beneficiaries. Rogers argues that he was a pretermitted heir under the will and that there is no evidence that Pratt intended to intentionally exclude him under the will.
A.
Pursuant to In The Matter of Estate of Flowers, 1993 OK 19, 848 P.2d1146, the Adoption Decree Coupled With The Will's False Statements That The Testatrix Had No Children Renders the Will Ambiguous.
Â¶16 In In re the Estate of Fred Franklin James v. Raunikar, 2020 OK 7, --- P.3d ---, we recently discussed a child or children as a pretermitted heir(s). We said in paragraphs 17-20:

Â¶17 Disposing of property is an inalienable natural right throughout a person's lifetime.[2] However, the method of disposition of property after death and the right of inheritance are statutory.[3] The Oklahoma Legislature provided for wills and trust as a means of disposing of one's property at death.[4] The Oklahoma pretermitted heir statute, 84 O.S. 2011 Â§132, provides a statutory method of inheritance for children whom a testator unintentionally fails to provide for or name in a will.[5] It is not a limitation on a testator's power to dispose of his or her property. Rather, it is an assurance that a child is not unintentionally omitted from a will. It provides:

When any testator omits to provide in his will for any of his children, or for the issue of any deceased child unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator, as if he had died intestate, and succeeds thereto as provided in the preceding section.

The pretermitted heir statute does not secure a child with a minimum statutory share of a parent's estate upon the death of a parent.[6] The purpose of the statute is merely to protect an issue's right to take, unless the will gives a clear expression of intentional omission.[7] By the terms of the statute, it must "appear" that the testator intended to leave his child with nothing.[8]

Â¶18 Cases are legion holding that the prime purpose in construing a will is to arrive at and give effect to the intent of the testator.[9] Since 1928, this Court has consistently interpreted this statute to the effect that an intentional omission to provide for the testator's issue must appear clearly within the four corners of the testamentary document itself.[10] In other words, was there an omission of the will contestant completely, either by name or class? Is there any language in the will manifesting the omission as an intentional act?[11] 
Â¶19 Even the disposition of the entire estate does not alone evince an intent to omit a child or a deceased child's issue. Intent to disinherit must appear upon the face of the will in strong and convincing language.[12] It is also well established that the intent to disinherit must appear within the four corners of the testamentary document, and that extrinsic evidence is inadmissable unless ambiguities appear on the face of the will.[13]
Â¶20 We have previously noted that there are many ways a person can express the intention to omit to provide for his or her children, including: 1) expressly state that the named child is to receive nothing;[14] 2) provide only a nominal amount for the child who claims to be pretermitted;[15] 3) name a child, but then leave them nothing;[16] 4) declare any child claiming to be pretermitted take nothing;[17] or 5) specifically deny the existence of members of a class to which the claimant belongs coupled with a complete disposition of the estate.[18] (Footnotes included, but renumbered).
Â¶17 It is this last method which appears to concern this cause. Here, Pratt falsely stated that she did not have any children, noted that she did have other living relatives, but she expressly left her "other living relatives" nothing. Instead, she left her entire estate to specific beneficiaries. In The Matter of Estate of Hester, 1983 OK 93, 671 P.2d 54, the Court was faced with a similar scenario. In Hester, the testator's son alleged that he was a pretermitted heir. It was not disputed that the son was the child of the testator. The will, however, falsely stated that the testator had no children. The testator left his entire estate to his brothers and sisters per capita. The Court determined that the will was not ambiguous, and that no extrinsic evidence was necessary. In a 5-4 decision, the Court held that the specific denial of the existence of members of a class to which the claimant belongs, coupled with a complete disposition of the estate, evinced a definite intent that all members of the named class are intentionally omitted from the provisions of the testator's will.
Â¶18 However, ten years later, in In The Matter of Estate of Flowers, 1993 OK 19, 848 P.2d 1146, the Court addressed whether an adopted child qualifies as a pretermitted heir under 84 O.S. 1991 Â§132.[19] In Flowers, the Flowers adopted siblings, a sister and brother. Four years later, the Okfuske County Court found that adopted daughter to be delinquent and her custody and care were committed to the State. The Court order provided that the Flowers were released from all further liabilities and responsibilities as the daughter's parents. The parental rights to the son were never terminated.
Â¶19 After Mrs. Flowers, the adoptive mother died, leaving her estate to her sisters, the adopted daughter filed a petition against Flowers' estate as a pretermitted heir. In Flowers, the Court addressed whether: 1) an adopted child's right to inherit was legally severed; and 2) extrinsic evidence was admissible to establish the testator's intent to disinherit the adopted daughter.
Â¶20 We noted that pursuant to 10 O.S. 1991 Â§1132,[20] the termination of parental right negates the parent's right to inherit from the child. The statute specifically provides that termination shall not "in any way affect the right of the child to inherit from the parent." We held that pursuant to the plain language of Â§1132, termination does not affect the right to inherit from the parent. Accordingly the adopted daughter qualified as a pretermitted heir. Title 10 O.S. 2011 Â§1132, has been renumbered as 10A O.S. Supp. 2019 Â§1-4-906, but it still provides that termination "shall not in any way affect the child's right to inherit from the parent."[21]
Â¶21 While Flowers involved an adoptive mother whose parental rights were terminated as to the adoptive child and this cause involves a natural mother who gave up her child for adoption, the rationale of Flowers, coupled with 84 O.S. 2011 Â§132[22] and 10A O.S. Supp. 2019 Â§1-4-906[23] controls this cause. The Legislature could have terminated a child's status as a legal heir, but expressly did not do so. Just as a termination order terminates a parents' rights, but does not affect a child's legal status as an heir, neither would an adoption order. While the parental rights of a natural parent to a child given up for adoption are severed, the child's status as a legal heir is not. Accordingly, Rogers qualifies as a pretermitted heir under 84 O.S. 2011 Â§132.[24]
Â¶22 Hester, supra, did not involve an adoption, nor did it discuss a child's right to inherit once their parents' (adoptive or natural) rights have been terminated. Consequently, the facts of Hester, supra, and this cause are distinguishable, but Hester and Flowers, supra, also differs markedly regarding extrinsic evidence. In Hester, the Court determined that a will which falsely states that a decedent had no children and which otherwise disposed of the entire estate, was unambiguous on its face so that no extrinsic evidence of intent was allowed.
Â¶23 In Flowers, supra, the Court held that the existence of the order terminating the testatrix's parental rights is an extraneous fact rendering the will ambiguous. Consequently, parol evidence was admissible to ascertain the adoptive mother's intent. In Flowers, the Court said:
Â¶13 Both parties rely upon this Court's pronouncement in Matter of Estate of Crump, 614 P.2d 1096, 1098 (Okla. 1980). In Crump, we recognized the general rule that under 84 O.S. 1991 Â§ 132 - the pretermitted heir statute - intentional omission to provide for the testator's issue must appear from the four corners of the testator's will. However, the Court also noted an exception to the parol evidence rule. Under this exception, parol evidence is admissible to resolve ambiguous expressions used in the text or created by the existence of facts extraneous to it. The only argument made in Crump for the application of the exception to the parol evidence rule was premised on the testator's disposition of his entire estate. Testatorial disposition of an entire estate does not alone evince an intent to omit to provide for a child or a deceased child's issue. Parol evidence was not allowed to show the testator's intent to disinherit his granddaughter in Crump.
Â¶14 The instant cause is similar to Crump in that the entire estate was given to Flowers' sisters in the will. The cause differs in that there is an extraneous fact making the will ambiguous - the termination order, duly filed in a court of record and admitted by the trial court. The very existence of this order raises questions concerning Flowers' intent. If Flowers thought the termination order ended any relationship between she and Hooper, the failure to mention Hooper in the will may well have been intentional. If she believed that some familial relationship continued to exist, did Flowers' stated intent to disinherit her adopted son and his "kin" coupled with the false statement that she had only an adopted son create an ambiguity within the will? The intention of the testator is controlling; when the Court construes a will, it must ascertain and give effect to the testator's intent, unless the intent attempts to effect what the law forbids. Here, the termination order makes the admission of extrinsic evidence necessary to determine intent. We find that the existence of the termination order is an extraneous fact rendering the testatrix's will ambiguous. Parol evidence is admissible to ascertain the adoptive mother's intent. (Citations omitted, emphasis in original).
Â¶24 We went on to hold that adoptive child's legal relationship as a child was severed by the termination order but it did not affect her status as a pretermitted heir. The rationale of Flowers, supra, is more persuasive than that espoused in Hester, supra. Consequently, to the extent Hester, supra, and antecedent decisions upon which it relied are hereby overruled.[25] The existence of the adoption decree, coupled with the will's false statement that Pratt had no children rendered the will ambiguous. Parol evidence is necessary to ascertain her intent.
B.
The Evidence of Intent to Omit the Pretermitted Child is Insufficient.
Â¶25 The trial court determined that the false statement that Pratt had no children coupled with a complete disposition of her entire estate reflected Pratt's intent to intentionally omit Rogers from her will. Rogers acknowledges that where there is any substantial evidence supporting the judgment and findings of the trial court, the judgment of the trial court will not be disturbed on appeal.[26] He argues that there is no substantial evidence of intent to omit him, because Pratt lacked testamentary capacity to even execute a will all together. The estate disagrees.
Â¶26 The witnesses who watched Pratt sign the will, and the notary who notarized it, all testified that Pratt seemed competent. Pratt acknowledged that she was signing her will, and that it was done the way she wanted it done. However, this was not the substantial evidence or even the weight of the evidence, regarding her intent to omit her chid. Pratt's intent, as well as testamentary capacity, were questionable at best.
Â¶27 Pratt knew that she had had a child and placed him for adoption. The evidence reflects that she sought him out after the adoption and met him, and that he lived with her for several months. Yet, she denied having children in the will. She never told her lawyer that she had a child. He never had the opportunity to explain the effect of omitting a child -- regardless of whether he was placed for adoption. Apparently Pratt couldn't remember the names of her sisters either because she neglected to give them to her lawyer as well.
Â¶28 While Pratt initially contacted the lawyer, and he talked to her a few times before the final will was drafted, Pratt never sat down with the lawyer and went over the drafts or the final draft before she signed it. The was no evidence that the lawyer conveyed to her the final effects of her testamentary acts, nor gave her any instructions on how to execute the will properly. Rather, it was a drive-by will.
Â¶29 She picked up the will from her car on the way home from surgery after having been under anesthesia and signed it the next day. She had been taking Xanax as well as oxycodone at the time. Neither the witnesses nor the notary was aware of Pratt's medications, her anesthesia, nor her surgery. The urgency of her needing the will before the surgery reflects that she was concerned about possibly recovering from the surgery, given her conditions. Pratt's surgeon described her as weak and noted that anesthesia and medications would affect a person's cognitive abilities -- especially a person who is weak and/or debilitated. She was weak enough that she was confined to a bed once she returned from the surgery and signed the will from that bed.
Â¶30 In addition to her having had surgery the day before executing the will, other evidence illustrates deteriorating cognitive abilities. Pratt let her home rot around her to the extent that it was uninhabitable. It had no water or sewer. She withdrew from her family, friends, and social activities. She had a large mass on her anus, but neglected to inform her doctors. While the evidence was conflicting, there was neither substantial evidence nor even the weight of evidence which supported an intent to omit a child from her will. Consequently, the trial court is reversed and the cause remanded for proceedings consistent with this our determination. 
CONCLUSION
Â¶31 The child given up for adoption qualifies as a pretermitted heir. The false statement that the testator has no children, coupled with the complete disposition of the estate was not dispositive of her intent when documents such as an adoption decree conflicted with such statements. Rather, an ambiguity existed which required parol evidence of intent. The evidence presented was insufficient to show an intent to omit the pretermitted child. Because we determine that the evidence was insufficient to show that the testator intentionally omitted Rogers as a pretermitted heir, we need not address whether the will was procured by undue influence. As the only child of the testator, Rogers takes Pratt's entire estate according to the laws of intestate succession.[27] Consequently, the question of undue influence is moot.
COURT OF CIVIL APPEALS OPINION VACATED;
21TRIAL COURT REVERSED AND REMANDED.
Gurich, C.J., Kauger, Edmondson, Colbert, Combs, Kane and Rowe, JJ., concur;
Darby, V.C.J. and Winchester, J., dissent.
FOOTNOTES
[1] We have previously, throughly, addressed the procedural posture of the presumption of undue influence in In the Matter of the Estate of Holcomb, 2002 OK 90, 63 P.3d 9, Estate of Gerard v. Gerard, 1995 OK 1144, 911 P.2d 266, and In the Mattter of Estate of Maheras, 1995 OK 40, 897 P.2d 268. Because we determine that the evidence was insufficient to show that the testator intentionally omitted Rogers as a pretermitted heir, we need not address whether the will was procured by undue influence. As the only child of the testator, Rogers takes Pratt's entire estate according to the laws of intestate succession. Consequently, the question of undue influence is moot. Title 84 O.S. 2011 Â§213 provides in pertinent part:

2. The share of the estate not passing to the surviving spouse or if there is no surviving spouse, the estate is to be distributed as follows:

1. a. in undivided equal shares to the surviving children of the decedent and issue of any deceased child of the decedent by right of representation, or . . .
[2] Estate of Jackson, 2008 OK 83, Â¶15, 194 P.3d 1269; Snodgrass v. Snodgrass, 1924 OK 597, Â¶10, 231 P.237.
[3] Estate of Jackson, see note 2, supra; Snodgrass v. Snodgrass, see note 2, supra.
[4] Title 84 O.S. 2011 Â§44; 60 O.S. 2011 Â§175.1; 84 O.S. 2011 Â§301.
[5] Estate of Jackson, see note 2, supra; Estate of Hoobler, 1996 OK 56, Â¶8, 925 P.2d 13.
[6] Estate of Jackson, see note 2, supra; Estate of Hoobler, see note 5, supra.
[7] Estate of Hoobler, see note 2, supra; Crump's Estate v. Freeman, 1980 OK 80, Â¶3, 614 P.2d 1096.
[8] In the Matter of the Estate of Hester, 1983 OK 93, Â¶4, 671 P.2d 54.
[9] Estate of Hester, see note 8, supra at Â¶9, and citing for e.g., In re Estate of Bovaird, 1982 OK 48, 645 P.2d 500; Miller v. First National Bank & Trust Co., 1981 OK 133, 637 P.2d 75; Bridgeford v. Estate of C.E. Chamberlin, 1977 OK 206, 573 P.2d 694.
[10] Weaver v. Laub, 1978 OK 242 Â¶6, 574 P.2d 609; Spaniard v. Tantom, 1928 OK 202, Â¶0, 267 P.623.
[11] Estate of Severns v. Severns, 1982 OK 64, Â¶6, 650 P.2d 854.
[12] Estate of Severns v. Severns, see note 11, supra.
[13] Estate of Hester, see note 8, supra; Estate of Severns v. Severns, see note 11, supra.
[14] Estate of Hester, see note 8, supra at Â¶10.
[15] Estate of Hester, see note 8 supra Â¶10; Bridgeford v. Estate of C.E. Chamberlin, see note 9, supra.
[16] Estate of Hester, see note 8, supra at Â¶10; Pease v. Whitlach, 1964 OK 264, Â¶7, 397 P.2d 894.
[17] Estate of Hester, see note 8 supra at Â¶10, Dilks v. Carson, 1946 OK 108, 168 P.2d 1020.
[18] Estate of Hester, see note 8 supra at Â¶10; Dilks v. Carson, see note 17, supra. We have also held that the intention to disinherit children can appear on the face of a will within which no mention of the children has been made by name or class. Compare, In Re Adams' Estate, 1950 OK 204, 222 P.2d 366 with Estate of Glomset, 1976 OK 30, 547 P.2d 951 and Estate of Severns v. Severns, see note 11, supra.
[19] Title 84 O.S. 1991 Â§132 provided:
When any testator omits to provide in his will for any of his children, or for the issue of any deceased child unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator, as if he had died intestate, and succeeds thereto as provided in the preceding section. 
It has remained unaltered since its enactment in 1910 and remains unaltered in its current version.
[20] Title 10 O.S. 1991 Â§1132 provided:
The termination of parental rights terminates the parent-child relationship, including the parent's right to the custody of the child and his right to visit the child, his right to control the child's training and education, the necessity for the parent to consent to the adoption of the child and the parent's right to the earnings of the child, and the parent's right to inherit from or through the child. Provided, that nothing herein shall in any way affect the right of the child to inherit from the parent.
[21] Title 10A O.S. 2011 Â§1-4-906 provides:
A. The termination of parental rights terminates the parent-child relationship, including:
1.1. The parent's right to the custody of the child;
2. The parent's right to visit the child;
3. The parent's right to control the child's training and education;
4. The parent's right to apply for guardianship of the child;
5. The necessity for the parent to consent to the adoption of the child;
6. The parent's right to the earnings of the child; and
7. The parent's right to inherit from or through the child.
Provided, that nothing herein shall in any way affect the right of the child to inherit from the parent.
B. 1. Except for adoptions as provided in paragraph 3 of this subsection, termination of parental rights shall not terminate the duty of either parent to support his or her minor child.
2. Any order terminating parental rights shall indicate that the duty of the parent to support his or her minor child will not be terminated unless the child is subsequently adopted as provided by paragraph 3 of this subsection.
3. Child support orders shall be entered by the court that terminates parental rights and shall remain in effect until the court of termination receives notice from the placing agency that a final decree of adoption has been entered and then issues an order terminating child support and dismissing the case.
C. The Department of Human Services shall not recommend a parent who has had his or her parental rights terminated to seek guardianship of a child in the custody of the Department.
[22] Title 84 O.S. 2011 Â§132, see note 19, supra.
[23] Title 10A O.S. 2011 Â§1-4-906, see note 21, supra.
[24] Title 84 O.S. 2011 Â§132, see note 19, supra.
[25] The antecedent decision in which In The Matter of Estate of Hester, 1983 OK 93, 671 P.2d 54, relied upon are O'Neill v. Cox, 1954 OK 270 P.2d 663 and In Re Adams Estate, 1950 OK 201, 222 P.2d 366. The Court in Hester, supra, relied on Adams, supra, even though it also noted that Adams appeared to be plainly inconsistent with more recent pronouncements.
[26] In the Matter of Estate of Speers, 2008 OK 16, 179 P.3d 1265.
[27] Title 84 O.S. 2011 Â§213, see note 1, supra.